*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0268p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RSR CORPORATION,

> *Plaintiff-Appellant,*

*v.*

No. 06-3840

COMMERCIAL METALS CO.,

> *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 03-00013—Walter H. Rice, District Judge.

Argued: April 23, 2007

Decided and Filed: July 18, 2007

Before: SUHRHEINRICH, CLAY, and SUTTON, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Matthew J. Nasuti, SEBALY SHILLITO + DYER, Dayton, Ohio, for Appellant. David L. Petitjean, CHAPPANO WOOD, Columbus, Ohio, for Appellee. **ON BRIEF:** Matthew J. Nasuti, Dianne F. Marx, SEBALY SHILLITO + DYER, Dayton, Ohio, for Appellant. David L. Petitjean, CHAPPANO WOOD, Columbus, Ohio, for Appellee.

SUTTON, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. CLAY, J. (pp. 8-11), delivered a separate dissenting opinion.

_____

### OPINION

_____

SUTTON, Circuit Judge. More than three years after signing a consent decree with the United States to pay for the environmental remediation of a contaminated industrial site in Arcanum, Ohio, RSR Corporation filed this lawsuit seeking contribution for the clean-up costs from Commercial Metals Company. Because the district court properly determined that RSR filed this contribution action after the three-year limitations period, *see* 42 U.S.C. § 9613(g)(3), we affirm.

I.

From 1966 through 1982, Harold Shane reprocessed car, truck and industrial batteries at a facility in Arcanum, Ohio. Shane received the batteries from several suppliers, including RSR and Commercial Metals. Toxic byproducts of the facility's activities included battery acid and a "lead

oxide sludge[],'' both of which seeped into the ground and eventually threatened local water supplies.  JA 256.

In 1983, the EPA placed Shane's facility on the National Priority List, and the federal agency began cleaning up the site.  *See* Amendment to National Oil and Hazardous Substance Contingency Plan; National Priorities List, 48 Fed. Reg. 40,658, 40,670 (Sept. 8, 1983) (codified at 40 C.F.R. pt. 300, app'x B).  In 1989, the United States filed a lawsuit against Shane under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) seeking "to recover response costs incurred by the United States" in cleaning up the site.  JA 253; *see* 42 U.S.C. § 9607(a) ("[T]he owner and operator of . . . a facility . . . shall be liable for . . . all costs of removal or remedial action incurred by the United States Government . . . .").

Over the next nine years, the scope of the litigation expanded to include other potentially responsible parties.  RSR entered the litigation as a fourth-party defendant in November 1993.  *See* 42 U.S.C. § 9607(a) ("[A]ny person who . . . arranged . . . for disposal or treatment . . . of hazardous substances . . . at any facility . . . shall be liable for . . . all costs of removal or remedial action incurred by the United States Government . . . .").  As the burgeoning litigation proceeded, the United States continued to clean up the site, eventually incurring more than $2,700,000 in response costs.

On February 11, 1998, the United States filed a proposed consent decree between itself and Shane, which the district court accepted and entered seven months later.  On March 23, the district court approved a *de minimis* consent decree, resolving the liability of many minor polluters at the Arcanum site.  And on August 28, the United States filed with the district court a proposed consent decree among itself, RSR, two major contributors and one *de minimis* contributor, and the court entered the consent decree in April 1999.

Consistent with the April 1999 consent decree, RSR and its co-defendants agreed to reimburse the United States for $201,832 in past response costs, to "finance and perform" the remedial work needed to finish cleaning up the Arcanum site, JA 514, to post a bond for $5,800,000 (the estimated cost of the remaining remedial work), to "undertake . . . further response actions to the extent" necessary, JA 529, and to reimburse the United States for up to $150,000 in future response costs.  In return, the United States agreed "not to sue or take administrative action" that would impose additional liability on RSR and its co-defendants, JA 578, and the defendants received the right to seek contribution from other potentially responsible parties.  Attached to the consent decree was a "final volumetric ranking" of contributors to the contamination at the site, showing RSR as the largest and Commercial Metals as the 62nd largest of the 444 known contributors.  JA 665–67.  The consent decree also provided that the district court would retain jurisdiction over the parties until the complete remediation of the site.

On July 2, 2001, RSR and its co-defendants finished cleaning up the site at a total cost of $2,631,606.

On January 16, 2003, RSR filed this contribution action against Commercial Metals, and the district court consolidated the action with the *Shane* litigation.  Commercial Metals moved to dismiss the complaint on statute-of-limitations grounds, and the district court granted the motion.

## II.

CERCLA "grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994).  The statute permits the United States to issue enforcement orders "as may be necessary to protect public health and welfare and the environment."  42 U.S.C. § 9606(a).  And it authorizes a number of causes of action designed to obtain the prompt remediation of waste sites and the fair

apportionment of remediation costs: reimbursement actions for "[a]ny person who receives and complies with the terms" of an enforcement order, *id.* § 9606(b)(2)(B); abatement actions to prevent the "actual or threatened release of a hazardous substance," *id.* § 9606(a); governmental cost recovery actions that allow the United States, a State or an Indian tribe to recover "all costs of removal or remedial action incurred" from potentially responsible parties, *id.* § 9607(a)(4)(A); private cost recovery actions that allow "any other person" to recoup "any other necessary costs of response incurred . . . consistent with the national contingency plan," *id.* § 9607(a)(4)(B); *see United States v. Atl. Research Corp.*, 127 S. Ct. 2331, 2335–36 (2007); contribution actions to "allocate response costs among liable parties using . . . equitable factors," 42 U.S.C. § 9613(f)(1); and an assortment of other actions not relevant here.

Appreciating the risk that never-ending litigation might impede a "swift and effective response to hazardous waste sites," *Anspec Co., Inc. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1247 (6th Cir. 1991), Congress authorized the United States and potentially responsible parties to launch clean-up efforts first, then recover the costs from other responsible parties later—through settlements, consent decrees and, if need be, judgments. *See, e.g.*, 42 U.S.C. § 9622(b)(1) (authorizing settlements to reimburse parties for certain remedial actions); *id.* § 9622(d) (authorizing consent decrees to enforce cleanup agreements); *id.* § 9622(h) (authorizing settlements for recovery of "costs incurred by the United States Government" from responsible parties); *id.* § 9622(g) (authorizing settlements for cost recovery from *de minimis* responsible parties); *see also, e.g.*, *id.* § 9606(b)(2)(A) (authorizing those who "compl[y]" with enforcement orders to seek reimbursement from the United States); *id.* § 9607(a) (authorizing actions to recover costs "incurred" in a cleanup effort).

The statutory authority of government entities and private parties to bring cost-recovery and contribution actions later, however, does not last forever. "An initial action for recovery of the costs . . . for a remedial action," for example, must be filed "within 6 years after initiation of physical on-site construction of the remedial action," and subsequent cost recovery actions "may be maintained at any time during the response action, but must be commenced no later than 3 years after" its completion. *Id.* § 9613(g)(2)(B). A potentially responsible party may bring a contribution action "during or following any civil action" under the statute's enforcement and cost-recovery provisions, *id.* § 9613(f)(1); *see Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 161 (2004), or after resolving its liability to the United States "in an administrative or judicially approved settlement," 42 U.S.C. § 9613(f)(3)(B). Such an action for "response costs or damages" must be filed within 3 years of:

> (A) the date of judgment in any action . . . for recovery of such costs or damages, or
> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

*Id.* § 9613(g)(3).

As RSR's complaint indicates, it filed this action "pursuant to 42 U.S.C. § 9613(f)"—the contribution provision. JA 3. RSR's right to seek contribution from Commercial Metals and other potentially responsible parties arose from the 1999 consent decree, which required it to pay the United States $201,832 in past response costs, to pay up to $150,000 in future response costs incurred by the United States, and, most critically, to "finance" the costs of the as-yet-unfinished remedial work, JA 514. *See* 42 U.S.C. § 9613(f)(3)(B) ("A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to [such] a settlement . . . ."). Not only did the statute give RSR a right to seek contribution at this point, but the consent decree itself also contemplated such actions. *See* JA 586

(providing that RSR and its co-defendants will notify the United States of "any suit or claim for contribution brought by them for matters related to this Consent Decree").

RSR has never disputed that its complaint amounted to a contribution action, *see* 42 U.S.C. § 9613(f), as opposed to a cost recovery action, *see id.* § 9607(a)(4)(B). And § 113(g)(3) of CERCLA requires that an "action for contribution for any response costs or damages" commence within three years of the "entry of a judicially approved settlement with respect to such costs or damages." *Id.* § 9613(g)(3). RSR acknowledges that the 1999 consent decree constitutes a "judicially approved settlement" "resolv[ing] [RSR's] liability to the United States" for the purpose of *authorizing* a contribution action. *See id.* § 9613(f)(3)(B). And we see no reason why it does not also constitute a "judicially approved settlement" for the purpose of *limiting* when that action may be brought—for determining in other words when the right to bring that action accrues for statute-of-limitation purposes. To conclude otherwise would allow a "judicially approved settlement" to authorize a contribution action to recover the "costs" imposed by that settlement without placing *any* limit on when that action must be brought. *Cf. Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 13 (1st Cir. 2004) (explaining that the reference to "such costs or damages" in § 113(g)(3)(A) "refers to the costs or damages contained in the 'judgment'" "mentioned earlier in the sentence and identifies a particular claim or payment"). Because RSR waited more than three years to bring its contribution action after the April 1999 consent decree, its complaint lies outside of the limitations period and must be dismissed.

RSR resists this interpretation on the ground that CERCLA contains a "general [six-year] statute of limitations" in § 113(g)(2) with "four narrow exceptions" in § 113(g)(3), and that none of the exceptions applies here because RSR entered into only a "cleanup agreement" with the United States. Br. at 9. The statutory text, however, does not set forth a "general statute of limitations" with exceptions but instead sets forth different limitations periods for different causes of action. *See* 42 U.S.C. § 9613(g)(1) (three-year limitations period on "[a]ctions for natural resource damages"); *id.* § 9613(g)(2)(A) (three-year limitations period on the "initial action for recovery of the costs" of a removal action); *id.* § 9613(g)(2)(B) (six-year limitations period on the "initial action for recovery of the costs" of a remedial action); *id.* § 9613(g)(2) (three-year limitations period on "any subsequent action . . . for further response costs"); *id.* § 9613(g)(3) (three-year limitations period on any "action for contribution"); *id.* § 9613(g)(4) (three-year limitations period on any "action based on rights subrogated . . . by reason of payment of a claim"); *id.* § 9613(g)(5) (three-year limitations period on indemnification actions).

Equally unavailing is RSR's contention, seconded by the dissent, that the underlying agreement between RSR and the United States is not a "judicially approved settlement" under § 113(g)(3)(B). Here is the key language of the statute in context:

> No action for contribution for any responses costs or damages may be commenced more than 3 years after–
>
> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>
> (B) the date of [1] an administrative order under section [122(g) of CERCLA] (relating to de minimis settlements) or [2] [an administrative order under section 122(h)] (relating to cost recovery settlements) or [3] entry of a judicially approved settlement with respect to such costs or damages.

*Id.* § 9613(g)(3). As RSR and the dissent see it, the "with respect to such costs or damages" language in subparagraph B refers only to costs or damages arising from § 122(g) or (h) administrative orders.

That is not, however, the natural way to read the provision. The point of this section of the statute, as the introductory clause indicates, is to establish a time bar for contribution actions for "any response costs or damages." Subparagraph (A) says that the three-year time bar applies to "such costs or damages" arising from "judgment[s]," while subparagraph (B) says that it applies to "such costs or damages" arising from (1) "de minimis settlements" reflected in an administrative order under § 122(g), (2) "cost recovery settlements" reflected in an administrative order under § 122(h) and (3) "judicially approved settlement[s]." In other words, just as the phrase "such costs or damages" in subparagraph (A) limits the time bar on judgment-authorized contribution actions to those "costs or damages contained in the 'judgment' mentioned," *Am. Cyanamid*, 381 F.3d at 13, so the same phrase in subparagraph (B) limits the time bar on settlement-authorized contribution actions to those "costs incurred in the settlement," *id.* at 15.

A contrary reading would work considerable damage to the statute, as it would mean that there is *no time bar* on contribution actions arising from "judicially approved settlements" of recovery actions initiated by private parties, individual States or Indian Tribes. Here is why. While §§ 122(g) and (h) authorize the United States to settle cost-recovery actions administratively, the United States is not the only entity entitled to bring a cost-recovery action. Individual States, Indian tribes and private parties who incur cleanup costs may also seek "cost recovery (as distinct from contribution)" under § 107(a). *See* 42 U.S.C. § 9607(a); *Atl. Research Corp.*, 127 S. Ct. at 2338. If, as RSR reads the statute, the provision relating to "judicially approved settlement[s]" refers only to settlements under § 122(g) or (h), then the contribution-action clock would never start as to settlements arising from actions initiated by these other parties. Rather than focus on *who* settled the cost-recovery action, in short, the statute asks us to focus on *what* was settled. *Cf. United States v. Navistar Int'l Transp. Corp.*, 152 F.3d 702, 712 n.17 (7th Cir. 1998) (rejecting reading of another CERCLA limitations provision that "would lead to the awkward result that actions brought by private parties to recover response costs would be subject to a different statute of limitations trigger when no government agency is involved in the clean-up").

To suggest that the 1999 consent decree covered only compensation for past response costs, as RSR suggests, also would be inaccurate. RSR was the largest polluter at the Arcanum site, and its expected liability was $2,335,407.96 based on RSR's contribution of almost 10,000 tons of hazardous materials (at the rate per pound established for *de minimis* contributors). The quid pro quo for seeking less reimbursement from RSR was RSR's agreement along with its co-defendants to assume liability for—to "finance and perform"—the as-yet-unfinished remedial work at the Arcanum site, JA 514, to post a $5,800,000 bond to guarantee their performance and to reimburse the United States for up to $150,000 in future response costs. While a party submitting to an administrative order requiring cleanup under § 106(a) may seek reimbursement for its costs from the Superfund, *see* 42 U.S.C. § 9606(b)(2), RSR and its co-defendants waived any such right, having agreed not to assert "any direct or indirect claim for reimbursement from the Hazardous Substance Superfund." JA 583. In view of the apportionment of liability for past and future response costs among the United States, RSR and its co-defendants, the consent decree was a cost-recovery settlement under § 122(h) as well as a cleanup agreement under § 122(d)(1). Because the consent decree established RSR's liability, its contribution action regarding those "costs" accrued on the date of the consent decree (April 12, 1999) and expired three years later.

RSR insists that it could not have resolved its liability to the United States in the consent decree before the completion of the remedial action. Reply Br. at 1. But RSR's promise of future performance was the very consideration it gave in exchange for the United States' covenant not to seek further damages. RSR and its co-defendants in other words resolved their liability to the United States by agreeing to assume *all* liability (vis-a-vis the United States) for future remedial actions. And even if the covenant regarding future response costs did not take effect until the remedial action was complete, the statute of limitations for contribution actions runs from the "entry" of the

settlement, 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of that settlement takes effect.

RSR also suggests that Commercial Metals waived this time-bar defense. But Commercial Metals raised the issue through its motion to dismiss on statute-of-limitations grounds, and the consolidation of this case with the *Shane* litigation (contrary to RSR's suggestion) did not moot the motion. If there is any waiver on this score, it is one of RSR's doing: It never raised the issue below. *See J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991).

The dissent also contends that our interpretation fails to respect congressional intent (as evidenced by the legislative history of the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613) because Congress did "not evince any intent . . . to codify a uniform three-year statue of limitations for all contribution actions." Dissent at 11. But the legislative history suggests that is just what the National Legislature had in mind, *see* H.R. Rep. No. 253, pt. I, at 79 (1985) ("This section establishes a three-year statute of limitations for the filing of an action for contribution for response costs or damages."), and indeed that history does not distinguish among types of judicially approved settlements when discussing that limitations period, *see id.* ("The statute of limitations [for contribution actions] begins to run at the date of judgment for recovery of response costs or damages or the date of entry of a judicially approved settlement with respect to such costs or damages."). The face of the amendments, more importantly, reveals a design to codify one limitations period for contribution actions and another period for cost-recovery actions—one subsection authorizes contribution actions, (entitled "(f) Contribution"); another places a limitations period on contribution actions, *see* 42 U.S.C. § 9613(g)(3) (entitled "(g) Period in which action may be brought" and "(3) Contribution"); whereas a third imposes a limitations period on cost-recovery actions, *see id.* § 9613(g)(2) (entitled "Actions for recovery of costs").

To the extent the dissent means to be saying that limitations on contributions actions will undermine CERCLA's goal of cleaning up industrial waste sites, that is not the case. The principal purpose of limitations periods in this setting is to ensure that the responsible parties get to the bargaining—and clean-up—table sooner rather than later. *See* H.R. Rep. No. 253, pt. I, at 80 (Early contribution actions "ha[ve] the effect of bringing all . . . responsible parties to the bargaining table at an early date.").

Nor does this interpretation conflict with decisions of the First and Tenth Circuits. *See* Dissent at 9–10. In *American Cyanamid Co. v. Capuano*, 381 F.3d 6 (1st Cir. 2004), the plaintiff filed a contribution action for groundwater-cleanup costs during negotiations with the United States over the recovery of those costs. Pointing to § 113(g)(3)(A), the defendant claimed that a 1988 judgment against the plaintiff for soil-cleanup costs triggered the limitations period for *any* contribution action that the plaintiff might bring regarding the site. In rejecting this argument, the First Circuit held that "such costs or damages" in § 113(g)(3)(A) referred only to "the costs or damages contained in the 'judgment' mentioned" in that subparagraph, not to "any response costs or damages that could arise in the future." 381 F.3d at 13. Our holding follows that approach, because we likewise construe "such costs or damages" in § 113(g)(3)(B) to refer only to those "costs or damages" imposed by the judicially approved settlement. *See Am. Cyanamid*, 381 F.3d at 15 (CERCLA "allows a settling PRP to seek contribution within three years of that settlement for costs incurred in the settlement."). Those "costs" here included the costs incurred under RSR's obligation to "finance and perform" the as-yet-unfinished remedial work at the Arcanum site. JA 514.

The plaintiff in *Sun Co., Inc. v. Browning-Ferris, Inc.*, 124 F.3d 1187 (10th Cir. 1997), sought recovery under § 107(a) and § 113(f) for costs it incurred remediating a brownfield site. The Tenth Circuit held that—because the government had never filed a "civil action" against the plaintiff

but only issued a unilateral administrative order—the plaintiff's action was an "initial action for recovery of . . . costs" and thus was covered by the six-year statute of limitations for cost-recovery actions: § 113(g)(2). *See Sun Co.*, 124 F.3d at 1192 (internal quotation marks omitted). Indeed, *Sun Co.* agreed with our resolution of the only question before us: "If the PRP incurred its cleanup costs pursuant to a civil action under §§ 106 or 107, it will have three years from the date of judgment or settlement in which to bring its contribution claim." *Id.* at 1193.

The dissent also rejects our reading of the text on the ground that it is "simply not practical . . . because future cleanup costs cannot be accurately estimated or determined" in time to bring a contribution action. Dissent at 10. But there is little question that Congress intended to impose a limitations period on actions under CERCLA, *see* 42 U.S.C. § 9613(g) ("Period in which action may be brought"), and intended a limitations period to apply even before a site was fully cleaned up, *see id.* § 9613(g)(2)(B) (initial action to recover remedial costs must commence "within 6 years after initiation of physical on-site construction").

To the extent the dissent means to raise a fairness concern, this is not the case to raise it. RSR knew that the cleanup of the Arcanum site was expected to cost up to $5,800,000 when it signed the 1999 consent decree, and the effort turned out to be far cheaper than expected, costing only $2,631,606. If anything, RSR's expected need for contribution was greater *before* the cleanup began, not afterwards.

III.

For these reasons, we affirm.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting. The majority finds that a three-year statute of limitations set forth in 42 U.S.C. § 9613(g)(3)(B) applies to this contribution action. The majority reaches this conclusion by misconstruing the statute of limitations, which does not apply to this action. I would reverse the district court's decision and remand this case to the district court for further proceedings.

Under CERCLA,

> [a]n initial action for recovery of the costs referred to in section 9607 of this title must be commenced--
> (A) for a removal action, within 3 years after completion of the removal action . . . and
> (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action.

42 U.S.C. § 9613(g)(2). Section 9613(g)(2) sets forth a six-year statute of limitations which applies only to initial actions seeking recovery of costs for remediation. Contribution actions are governed by a separate provision. Under 42 U.S.C. § 9613(g)(3),

> [n]o action for contribution for any response costs or damages may be commenced more than 3 years after--
> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
> *(B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.*

42 U.S.C. § 9613(g)(3) (emphasis added). The plain statutory language indicates that Congress identified specific circumstances which would trigger the statute of limitations contained in § 9613(g)(3). "Section 9613(g)(3) lists four events that trigger the running of the statute of limitations: (1) the entry of a judgment; (2) a § 9622(g) de minimis settlement; (3) a § 9622(h) cost recovery settlement; and (4) a judicially approved settlement." *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 11 (1st Cir. 2004); *see also Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 354 (6th Cir. 1998) (same).

The parties agree that *United States v. Shane*, No. C-3-89-383 (S.D. Ohio 2005), is the initial CERCLA action, and that there is no district court judgment that would trigger the statute of limitations under § 9613(g)(3)(A). The parties also agree that the consent decree in *Shane* was not a § 9622(g) *de minimis* settlement or § 9622(h) cost recovery settlement. There is only one category remaining which would trigger the statute of limitations: the "*entry of a judicially approved settlement with respect to such costs or damages.*" § 9613(g)(3)(B) (emphasis added). This Court must determine whether this statutory language refers exclusively to § 9622(g) *de minimis* settlements and § 9622(h) cost recovery settlements, or if it applies more broadly to other contribution actions.

In this case, Plaintiff argues that

> [t]he substance of the district court's error is that it held that the phrase in 42 U.S.C. § 9613(G)(3), "with respect to such costs," modifies any response costs and means the same thing as any response costs, while Plaintiff . . . assert[s] that "with respect to such costs" modifies 42 U.S.C. §§ 9622(g) and (h) settlements and means that the limitations period logically applies to such costs that there contained within these settlements and not future unknown costs.

(Plaintiff's Br. at 15). The district court erred in finding that the statute of limitations applied to all judicially approved CERCLA settlements, and the majority incorrectly reaches the same conclusion. I strongly believe that the majority's interpretation of the statute goes beyond the plain language of the statute and contravenes Congress' express intent. Since the "entry of a judicially approved settlement with respect to such costs or damages," § 9613(g)(3)(B), should be interpreted to mean a judicially approved settlement for costs or damages under § 9622(g) or § 9622(h), the three-year statute of limitations simply does not apply in this case. This interpretation of § 9613(g)(3)(B) is consistent with the plain language of the statute and Congress' express intent.

At least two circuit courts of appeals have interpreted the language at issue in this case. *See Sun Co., Inc. v. Browning-Ferris, Inc.*, 124 F.3d 1187, 1191-92 (10th Cir. 1997); *see also Am. Cyanamid Co.*, 381 F.3d at 13. These cases support a finding that the three-year statute of limitations does not apply in this case.

In *Sun Co., Inc.*, the Tenth Circuit construed 42 U.S.C. § 9613, noting that a "close reading of [the statute] makes it clear . . . that not all contribution claims have the same statute of limitations." 124 F.3d at 1191-92. The Court found that

> [i]f [a] suit proceeds to conclusion, the limitations period begins running on the date of judgment. 42 U.S.C. § 9613(g)(3)(A). If the parties settle, the limitations period begins running on the date of the administrative order embodying the settlement (for § 9622(g) de minimis settlements or § 9622(h) cost recovery settlements), or on the date of entry of a judicially approved settlement. 42 U.S.C. § 9613(g)(3)(B).

*Id.* at 1192. The Tenth Circuit held that cases that do not fit within the enumerated categories "will not trigger the running of the limitations period in [§9613(g)(3)]." *Id.* Rather, the Court found that § 9613(g)(2) contains a six-year statute of limitations that may apply in lieu of §9613(g)(3). *Id.* The Tenth Circuit concluded that "because no previous action . . . has been filed with respect to [defendant], Plaintiffs contribution action . . . is the '*initial action*' for recovery of such costs." *Id.* (emphasis in original). The Tenth Circuit imposed § 9613(g)(2)'s statute of limitations on cases "where none of th[e] triggering events [of § 9613(g)(3)] will ever occur." *Id.* at 1193. The Court explained this interpretation of the statute as follows:

> By its own terms, [§ 9613(g)(2)] covers the "initial action" for the recovery of [costs in a traditional cost recovery action]. There is no question that this language covers a traditional [ ] cost recovery action brought by the government or any other person who is not a waste-contributing [potentially responsible party]. Nothing in that language, however, excludes a contribution action, which also seeks to recover an equitable portion of [recovery costs], provided that

> particular contribution action is the "initial action" to recover such costs.

*Id.* at 1192. The Tenth Circuit's approach should not control because CERCLA clearly sets forth different statutes for contribution claims and initial actions, and because nothing in § 9613(g)(2) indicates that the statute of limitations may be imposed on a contribution action. Nevertheless, it is important to note that the Tenth Circuit expressly declined to apply the three-year statute of limitations and applied a longer six-year statute of limitations.[1]

Notably, the First Circuit has found that "a [potentially responsible party] would not lose the ability to seek contribution if a phase of a cleanup occurs after three years." *Am. Cyanamid Co.*, 381 F.3d at 14. In *Am. Cyanamid Co.*, the First Circuit expressly rejected the majority's position and declined to find that the statutory language reached all judicially approved CERCLA settlements. The First Court found that the language at issue in this case – namely, "entry of a judicially approved settlement with respect to such costs or damages" – refers only to response costs and damages contained in § 9613(g)(3)(B), specifically those provided under §§ 9622(g) and (h). *Id.* at 13 (finding "that 'such costs' in § 9613(g)(3) refers to the judgment mentioned earlier in the sentence and identifies a particular claim or payment.") (footnote omitted).

*Am. Cyanamid Co.* recognized that "[a]n environmental cleanup takes many years to complete. To make the cleanup manageable, it is done in phases." *Id.* at 16. The Court properly interpreted the statute to "allow[ ] for the cleanup and the payment for that cleanup to occur in phases." *Id.* at 14. I find that the First Circuit correctly concluded that a potentially responsible party should be able to seek contribution from other potentially responsible parties if the rehabilitation of a hazardous site occurs after three years. Requiring parties to file a contribution action within three years is sometimes simply not practical, especially in complex environmental contamination cases, because future cleanup costs cannot be accurately estimated or determined. Parties may not know the total rehabilitation costs or what the liability of each party may be. This interpretation of § 9613(g)(3)(B) makes sense; it may not be possible for a cleanup to begin immediately and a party may take years to incur sufficient costs for a contribution action to be warranted.[2] This approach is also consistent with the legislative intent underlying CERCLA. "CERCLA's 'essential purpose' [is] making 'those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.'" *Id.* at 15 (citation omitted) (alteration in original); *see also* H.R. Rep. No. 253(I), 99th Cong., 1st Sess., at 79 (1985) (Congress expressly "clarifie[d] and confirm[ed] the right of a person . . . under CERCLA to seek contribution from other potentially responsible parties, when the person

---

[1] In *Centerior Serv.*, a cost recovery action, this Court found that private parties are entitled to bring contribution claims under CERCLA. 153 F.3d at 356 (finding "that parties who themselves are [potentially responsible parties], potentially liable under CERCLA and compelled to initiate a hazardous waste site cleanup, may not bring an action for joint and several cost recovery, but are limited to actions for contribution."). Although *Centerior* mentions *Sun Co., Inc.*, the Court specifically noted that "we have no statute of limitations issue before us today," and expressly stated that "we need not adopt the Tenth Circuit's reasoning because a statute of limitations issue is not before our court today." *Id.* at 355. Since *Centerior* did not involve a statute of limitations issue, it does not impact the outcome of this case.

[2] The majority incorrectly suggests that Plaintiff is less entitled to bring a contribution action because it agreed to assume all liability for future remedial actions when it entered into the consent decree with the government. Plaintiff agreed to pay for future remedial costs, but did not waive the right to seek contribution. *See* H.R. Rep. No. 253(I), 99th Cong., 1st Sess., at 80 (1985) ("Parties who settle for all or part of a cleanup or its costs . . . can attempt to recover some portion of their expenses and obligations in contribution litigation from parties who were not sued in the enforcement action or who were not parties to the settlement."). Congress recognized that "[p]rivate parties may be more willing to assume the financial responsibility for some or all of the cleanup if they are assured that they can seek contribution from others." *Id.* Therefore, the consent decree does not impact Plaintiff's right to bring this contribution action.

believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances.").

In the instant case, the consent decree was an interim remedial agreement. Since interim and future response costs were simply unknown, it was impossible to identify specific costs or to anticipate the total expenses. This type of consent decree cannot immediately trigger the three-year statute of limitations period because exact rehabilitation costs and liability could not be determined until later. In contrast, under § 9622(g) *de minimis* settlements and § 9622(h) cost recovery settlements, parties reach a final settlement with the federal government with specific settlement amounts and recovery costs and damages. In that context, as Congress expressly mandated, it is reasonable and appropriate to immediately trigger the three-year statute of limitations.[3] The plain terms of the statute of limitations indicates that Congress intended the statute to apply to judicially approved settlements and administrative orders under §§ 9622(g) and (h). The statute, which features specifically enumerated provisions, does not indicate any intent on the part of Congress to codify a uniform three-year statute of limitations for all contribution actions. Congress addressed the problem by

> establish[ing] a three-year statute of limitations . . . . [that] begins to run at the date of judgment for recovery of response costs or damages or the date of entry of a judicially approved settlement with respect to such costs or damages.

H.R. Rep. No. 253(I), 99th Cong., 1st Sess., at 79 (1985).

The legislative history clearly shows that Congress intended the statute of limitations to be triggered by a judgment, § 9613(g)(3)(A), or an administrative order or judicially approved settlement under §§ 9622(g) or (h), § 9613(g)(3)(B). As *Am. Cyanamid Co.* recognized, "[i]n discussing the statute of limitations, Congress referred to § 9613(g)(3)(A) and § 9613(g)(3)(B) together." 381 F.3d at 15. Congress narrowly constructed and designated the categories of cases where the three-year statute of limitations would apply. The statutory language at issue in this case – the "entry of a judicially approved settlement with respect to such costs or damages" – refers to the categories Congress specifically enumerated, namely, §§ 9622(g) and (h). This interpretation is consistent with the fundamental rules of statutory construction, with the plain meaning of the statute, and with Congress' intent. The dismissal of this action is improper because there is no judgment and the consent decree does not fall under § 9622(g) or § 9622(h). Therefore, I would reverse the district court's decision and remand this case to the district court for further proceedings.

---

[3] In *Detrex Corp. v. Ashland Chem. Co.*, this Court recognized that a CERCLA action for recovery of response cost activity was time-barred under § 9613(g)(3)(B). 85 F. App'x 462 (6th Cir. 2003) (unpublished case). *Detrex* involved a cost recovery settlement which plainly falls under § 9613(g)(3)(B). The underlying consent decree in *Detrex* fit within one of the two categories enumerated in the statute of limitations, namely, §§ 9622(g) and (h). Since this action does not fall under an enumerated provision, *Detrex* does not contain legal analysis relevant to this case.