SUHRHEINRICH, Circuit Judge,
dissenting.
The question before this court is whether the Sanford and Orlando Administrative Orders by Consent (“Sanford/Orlando AOCs”) constitute “administrative settlements” within the meaning of CERCLA— that is, whether they “resolved [plaintiff Progress Energy’s] liability to the United States ... for some or all of a response action or for some or all of the costs of such action....” 42 U.S.C. § 9613(f)(3)(B). Although the Sanford/Orlando AOCs contain several provisions ITT Industries, Inc. v. BorgWarner, Inc., 506 F.3d 452 (6th Cir.2007), and Hobart Corp. v. Waste Management of Ohio, Inc., 758 F.3d 757 (6th Cir.2014), found indicative of an intent not to resolve liability, I disagree with the majority’s comparative analysis because it disregards two _ key similarities between the AOCs here and the agreements in Hobart and RSR Corp. v. Commercial Metals Co., 496 F.3d 552 (6th Cir.2007), agreements this Court found resolved liability.[1] These similarities dictate a different result.
I further dissent because many of the factors identified in this Circuit’s case law to determine whether an agreement resolves liability are arbitrary and immaterial.
A. The Import of the AOCs’ “Resolved Their Liability” Language and Exchange of Future Promises for Performance
The majority bases its decision primarily on similarities between the Sanford/Orlando AOCs and the AOCs in ITT and Bernstein v. Bankert, 733 F.3d 190 (7th Cir.2013), both of which the respective ruling courts found not to be administrative settlements. In my opinion, however, two critical features of the Sanford/Orlando AOCs align them more closely with the Hobart/RSR Corp. agreements by demonstrating the parties’ intent to enter into an administrative settlement. First, the Sanford/Orlando AOCs include the phrase “resolved their liability” from 42 U.S.C. § 9613(f)(3)(B), a deliberate reference to the statute authorizing a contribution action that Hobart found significant. Second, the AOCs express an exchange of promises that RSR Corp. ruled resolved liability: Progress Energy agreed to reimburse the EPA’s response costs and perform a remedial investigation and feasibility study (RI/FS) in exchange for the EPA’s covenant not to sue for the recovery of these costs or the performance of the RI/FS.
1. “Resolved Their Liability” Language
The Orlando/Sanford AOCs provide: “Following satisfaction of the requirements of this Consent Order, Respondents shall have resolved their liability to EPA for the performance of the RI/FS that is the subject of this' Order.” “[H]ave resolved their liability” mirrors 42 U.S.C. § 9613(f)(3)(B), which entitles a “person who has resolved its liability to the United States ... in an administrative or judicially approved settlement” to a contribution action. This inclusion of 42 U.S.C. § 9613(f)(3)(B)’s language distinguishes the Sanford/Orlando AOCs from the *1011 ITT/Bernstein agreements. As the Hobart court noted, the ITT AOC’s lack of any “explicit statement that ITT Industries had resolved its liability” distinguished it from the Hobart Administrative Settlement and Order on Consent (“AS-AOC”)’s explicit statement that “the Respondents have, as of the Effective Date, resolved their liability.” Hobart, 758 F.3d at 770; Hobart ASAOC, at 31. Therefore, under Hobart, an AOC’s explicit acknowl-edgement of resolved liability represents at least one indication of an administrative settlement. Consistent with this reasoning from Hobart, the district court viewed the Sanford/Orlando AOCs’ explicit resolution of liability as a key indication that both AOCs were administrative settlements.
The AOCs’ reference to the' § 9613(f)(3)(B) language not only separates them from the ITT/Bernstein agreements but also reflects an intent to enter into an administrative settlement with all its attendant statutory consequences. Although the language resolving liability in the Hobart ASAOC differs in verb tense from the language resolving liability in the Sanford/Orlando AOCs, they share a deliberate reference to the statutory language entitling a settling potentially responsible party (“PRP”) to a contribution action. According to Hobart, such a deliberate reference to the statute manifests an intent to form an administrative settlement. See Hobart, 758 F.3d at 768-69. Both the Hobart court and the majority lend weight to the Hobart ASAOC’s inclusion of “administrative settlement” in its title as well as its acknowledgement of itself as “an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA.” See id. at 768-69; Hobart ASOAC, at 31; Maj. Op. at 1004-05. These aspects of the AS-AOC are significant not because they satisfy any technical requirement but rather because they demonstrate the parties’ awareness of the governing statute and an intent to align their agreement with the statutory framework. See Hobart, 758 F.3d at 768; Maj. Op. at 1004-05. The Sanford/Orlando AOCs may not label themselves “administrative settlements,” but they come close by mirroring the statutory language that defines an administrative settlement: “Respondents shall have resolved their liability.” With this conscious use of the statutory language, the parties deliberately manifested their intent to enter into an administrative settlement.
2. RSR Corp.’s Binding Precedent Regarding the Exchange of Promises for Future Performance and a Conditional Covenant Not to Sue
The majority acknowledges that the Sanford/Orlando AOCs contain language indicating Progress Energy “shall have resolved their liability,” but reasons that the language does not in fact resolve Progress Energy’s liability since the resolution is conditioned upon Progress Energy’s performance. Maj. Op. at 1004. As the opinion further points out, the EPA’s covenants not to sue in the Sanford/Orlando AOCs take effect only upon Progress Energy’s payment of past and future response costs and upon issuance of the EPA’s notice of completion verifying Progress Energy’s performance of the work addressed in the consent order. Maj. Op. at 1005-06. The analysis contrasts these conditional provisions with the immediately effective resolution of liability and covenant not to sue in the Hobart ASAOC. Maj. Op. at 1005-06. The problem, however, is that the earlier-decided RSR Corp. precludes this distinction between immediate and conditional effectiveness as a basis for determining whether an agreement has resolved a PRP’s liability. See Darrah v. City of Oak Park, 255 F.3d 301, 309 (6th Cir.2001) (quoting Salmi v. Sec’y of Health *1012 & Human Servs., 774 F.2d 685, 689 (6th Cir.1985)) (holding that a three-judge panel cannot overrule the decision of an earlier panel “ ‘unless a United States Supreme Court decision requires modification or this Court sitting en banc overrules the prior decision’ ”).
In RSR Corp., the plaintiff filed a CERCLA contribution suit more than three years after entering into a judicially approved consent decree with the United States. RSR Corp., 496 F.3d at 554. The consent decree required RSR and the other settling defendants to reimburse the United States for past and future response costs and to perform remedial work on a contaminated site. Id. The consent decree included the United States’ covenant not to sue or take administrative action against RSR and the other settling defendants. Id. Although not quoted in full in RSR Corp., the RSR agreement’s covenant not to sue states:
[T]he United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA.... Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of payments required by Paragraph 49 of Section XVI (Reimbursement of Response Costs). With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA.
RSR Consent Decree, at 79.[2] The RSR agreement did not contain any provisions explicitly addressing resolution of RSR’s liability under 42 U.S.C. § 9613(f)(3)(B).
RSR argued that the consent decree was not a judicially approved settlement because RSR could not have resolved its liability before completing the remedial action that triggered the EPA’s covenant not to sue for future liability. RSR Corp., 496 F.3d at 558. The court rejected this argument, finding RSR and the EPA exchanged promises of future performance that created an enforceable, bilateral contract:
RSR insists that it could not have resolved its liability to the United States in the consent decree before the completion of the remedial action. But RSR’s promise of future performance was the very consideration it gave in exchange for the United States’ covenant not to seek further damages. RSR and its co-defendants resolved their liability to the United States by agreeing to assume all liability (vis-a-vis the United States) for future remedial actions. And even if the covenant regarding future response costs did not take effect until the remedial action was complete, the statute of limitations for contribution actions runs from the “entry” of the settlement, 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of that settlement takes effect.
Id. (internal citation omitted). Ultimately, the court held the consent decree consti *1013 tuted a judicially approved settlement that resolved RSR’s liability and triggered the statute of limitations for its contribution action. Id.
The contractual exchange in the RSR Corp. consent decree closely resembles the mutual promises in the Sanford/Orlando AOCs, including the EPA’s conditional covenant not to sue. Like RSR, Progress Energy made several promises under each AOC: to conduct and implement an RI/FS for each site, to pay the EPA for past response costs incurred at each site, and to reimburse the EPA for future response costs incurred in overseeing the RI/FS’s implementation. In return, the EPA promised in both RSR Corp. and this case not to sue the settling PRP for recovery of these costs or to compel further work of the sort described in the agreement, but only once the EPA received the promised funds and certified completion of the agreed-upon work. RSR Corp., 496 F.Bd at 554; RSR Consent Decree, at 79. Because the RSR Corp. court found that the contingent nature of the EPA’s promise did not preclude the resolution of RSR’s liability, neither should this panel decide that the conditional nature of the EPA’s promise not to sue in the Sanford/Orlando AOCs undercuts their status as administrative settlements. Under RSR Corp.’s logic, Progress Energy’s promise to undertake future stages of the clean-up process in exchange for the EPA’s conditional covenant not to sue established a binding contract that immediately resolved Progress Energy’s liability.
The majority rejects this reading of RSR Corp. by implying that the passage addressing the resolution of liability is non-binding, stating, “it is far from clear from our opinion that RSR even contested that the parties intended to resolve liability.” Maj. Op. at 1007. The opinion, in fact, directly recognized the issue as disputed: “RSR insists that is could not have resolved its liability to the United States in the consent decree.... ” RSR Corp., 496 F.3d at 558.[3] Not only did the court recognize and address this argument, it was necessary to rule on the argument to decide the case. Had the court accepted RSR’s position that the consent decree did not resolve its liability, RSR could have avoided the time-bar on its action by either: 1) taking advantage of the six-year statute of limitations for cost recovery actions in § 9613(g)(2)(B), id. at 556-58, or 2) calculating the statute of limitations from the date RSR completed the remedial action and allegedly resolved its liability, rather than the earlier date of the consent decree, see id. at 554, 557-58. Under either route, RSR’s action would not have been time-barred. Yet the court held RSR’s action was time-barred because: 1) RSR did resolve its liability, and 2) it did so by “agreeing to” enter into the consent decree — not by completing the actions promised in the consent decree. Id. at 557-58.[4]
*1014 Rather than accepting what RSR Corp. says on its face, the majority follows a misguided interpretation of RSR Corp. articulated by the Seventh Circuit in Bernstein and by this Court in the later-decided Hobart. The Bernstein court distinguished the RSR consent decree from the AOC at issue in that case by mistakenly construing RSR’s covenant not to sue as “immediately effective.” Bernstein, 733 F.3d at 213. It appears the Bernstein court reached this faulty conclusion by relying on a partial quote from RSR Corp. RSR Corp. quoted only part of the consent decree’s covenant not to sue, stating, “the United States agreed ‘not to sue or take administrative action’ that would impose additional liability on RSR.” RSR Corp., 496 F.3d at 554 (quoting RSR Consent Decree, at 79). The Bernstein court quoted this passage as support for its position that the RSR consent decree included “an immediately effective promise not to sue” that, in turn, established “an immediately effective release from liability.” Bernstein, 733 F.3d at 213. The Hobart court adopted Bernstein’s mistaken understanding of the RSR agreement’s terms and thus of RSR Corp.’s logic. See Hobart, 758 F.3d at 771 (stating that “[hjere, as in RSR Corp., which the Seventh Circuit specifically distinguished, the ASAOC went into effect on the Effective Date”). The majority, despite acknowledging the RSR covenant not to sue as. conditional, continues to treat the RSR consent decree as different from agreements bearing a similar exchange of promises for future performance, one of them a conditional covenant not to sue, simply because the later-decided Bernstein and Hobart did so. Maj. Op. at 1007-08.[5]
In fact, as shown above, the RSR covenant not to sue was not immediately effective, but rather conditioned upon the settling defendants’ payment to the EPA and the EPA’s certification of completion of the work — just like the covenants not to sue in this case. Yet the RSR Corp. court did not view this conditional covenant not to sue as a barrier to resolving liability under 42 U.S.C. § 9613(f)(3)(B). To the contrary, the court addressed the argument presented by Progress Energy — that liability cannot be resolved under a conditional covenant not to sue until complete performance — and rejected it on the grounds that such an interpretation is inconsistent with contractual principles and with setting the statute of limitations from the date of entry of a judicially approved settlement (or, as in this case, from the date of an administrative settlement). See RSR Corp., 496 F.3d at 558.
Despite this clear statement of law, the majority clings to the distinction between immediate and conditional effectiveness as a standard for determining the resolution of liability because “our more recent published decision in Hobart adopts and rati- *1015 fíes this distinction.” Maj. Op. at 1008. This conclusion ignores the rule that a three-judge panel in the Sixth Circuit cannot overrule the decision of an earlier panel “unless a United States Supreme Court decision requires modification or this Court sitting en bane overrules the prior decision.” Darrah, 255 F.3d at 309 (citation omitted). Because neither has happened here, this Court is bound by the earlier RSR Corp. even though it conflicts with a later panel’s reasoning.
The law in our Circuit on whether an agreement “resolves liability” under 42 U.S.C. § 9613(f)(3)(B) is so muddled that it is unsurprising this case engendered disagreement among the panel. I agree with the majority that Hobart draws a distinction between immediate and conditional covenants not to sue, but I am persuaded this Court’s earlier decision in RSR Corp. bars that line of reasoning. Therefore, because the Sanford/Orlando AOCs explicitly state that Progress Energy “shall have resolved their liability to the EPA” and include a bilateral exchange of promises for future performance, I would affirm the district court’s holding that the Sanford/Orlando AOCs resolved Progress Energy’s liability and triggered the statute of limitations for its contribution action.
B. Our Case Law’s Contradictory Stance on Provisions in CERCLA Settlement Agreements
Athough I believe the Sanford/Orlando AOCs are administrative settlements because of their key similarities with the Hobart and RSR Corp. agreements, the majority applied several factors consistently with this Circuit’s case law in determining the Sanford/Orlando AOCs did not resolve Progress Energy’s liability. Specifically, the majority analysis points to three similarities between the ITT/Bernstein AOCs and the Sanford/Orlando AOCs: 1) a broad reservation of rights by the EPA, 2) non-admission of liability by the settling PRP, and 3) a conditional covenant not to sue by the EPA. Both ITT and Hobart recognized these terms as signs of an intent not to resolve liability, warranting reliance on them in this case.[6] But I question whether these terms are actually relevant to resolving liability under 42 U.S.C. § 9613(f)(3)(B). Moreover, the presence of these same terms in the Hobart ASAOC and the RSR Corp. consent decree reveals a contradiction in this Circuit’s comparative approach and suggests these terms may be immaterial for purposes of defining an administrative settlement.
1. Reservation of Rights
Analogizing the Sanford/Orlando AOCs to the ITT/Bernstein AOCs based on the EPA’s broad reservation of rights falls squarely within this Court’s analytical approach. The ITT court highlighted the ITT AOC’s broad reservation of rights in holding that the AOC did not resolve liability. ITT, 506 F.3d at 459. The Hobart court, too, described the EPA’s reservation of rights in the Hobart ASAOC as “much narrower” than in the ITT AOC’s to support a distinction between the two agreements. Hobart, 758 F.3d at 770.
It is unclear, however, why a broad reservation of rights by the EPA impacts resolution of a PRP’s liability. The reser *1016 vation of rights in the Sanford/Orlando, ITT, and Bernstein agreements clarifies the EPA’s ability to take legal action in matters not covered by the agreement and to ensure the PRP’s satisfactory implementation of the clean-up addressed in the agreement. The reservation of rights does not allow the EPA to take legal action to compel Progress Energy or other PRPs to undertake actions they already performed pursuant to the settlement agreement. Because the performance contemplated by the Sanford/Orlando AOCs does not encompass all possible steps of clean-up under CERCLA, the AOCs leave the EPA with authority to order parts of clean-up not addressed by agreement. But this reserved authority should not affect the agreement’s status as an administrative settlement because 42 U.S.C'. § 9618(f)(3)(B) requires only a resolution of liability for “some” of a response action. Therefore, this factor should not lead us to hold the AOCs in this case are not administrative settlements.
Moreover, relying on a reservation of rights to find unresolved liability is in tension with the outcome in Hobart. Although not addressed in Hobart’s published opinion and thus not binding on this Court, it is noteworthy that the Hobart ASAOC[7] contained a reservation of rights parallel to that in the ITT, Bernstein, and Sanford/Orlando AOCs. The Hobart AS-AOC states, almost identically to the ITT AOC, see Maj. Op. at 1003-04, that “nothing herein shall prevent U.S. EPA ... from taking other legal or equitable action as it deems appropriate or necessary.” Hobart ASAOC, at 28. Given this provision, it is puzzling why the Hobart court described the. ASAOC’s reservation of rights as “much narrower” than the ITT AOC’s. Hobart, 758 F.3d at 770. Perhaps the parties did not bring the ASAOC’s broad reservation of rights to the court’s attention, or perhaps the court found the provision unimportant in light of the AS-AOC’s other terms indicating a resolution of liability, including those the EPA added to its model AOCs in 2005 (although if the latter scenario was the case, as the majority suggests, the Hobart court did not say so). Regardless of the reason, Hobart’s disregard of the ASAOC’s broad reservation of rights exposes an inconsistency in our case law’s analysis of settlement agreements under 42 U.S.C. § 9613(f)(3)(B). The presence of a reservation of rights provision in the Hobart ASAOC should at least give this Court pause about the wisdom of continuing to treat such a provision as indicative of unresolved liability.
2. Non-Admission of Liability
Both ITT and Bernstein emphasized a non-admission of liability by the PRP as a reason the respective AOCs did not resolve liability. Bernstein, 733 F.3d at 212; ITT, 506 F.3d at 460. Reliance on the Orlando[8] AOC’s similar non-admission of liability to conclude the AOC is not an administrative settlement thus rests on firm precedential ground.
It is questionable, however, that a refusal to admit liability denotes unresolved liability. Admitting liability is not the same as resolving liability. Compare Admission, Black’s Law Dictionary (10th ed.2014), available at Thomson Reuters Westlaw (“a statement in which someone admits that something is true or that he *1017 or she has done something wrong”), with Resolve, Black’s Law Dictionary (10th ed.2014), available at Thomson Reuters Westlaw (“to find an acceptable or even satisfactory way of dealing with (a problem or difficulty)”). A person can agree to undertake actions to resolve a claim against it without admitting to the factual or legal truth purportedly underlying that claim. Settlement agreements in other contexts frequently include such non-admission clauses. See 2 Defense of Equal Employment Claims § 14:8 (2015), available at Thomson Reuters Westlaw (observing the “common” use of non-admission clauses by employers settling employment discrimination claims). CERCLA itself implicitly recognizes this distinction between admission and resolution of liability in the section governing settlement agreements by providing, “the participation by any party in the process under this section shall not be considered an admission of liability for any purpose.” 42 U.S.C. § 9622(d)(1)(B). Although case law in our Circuit provides a firm basis for treating a non-admission of liability as a sign of unresolved liability, there is no logical connection between admitting and resolving liability. Therefore, a non-admission of liability should not be relied upon to find the Orlando AOC is not an administrative settlement.
Moreover, using a non-admission of liability to hold the Orlando AOC is not an administrative settlement cuts against the results in RSR Corp. and Hobart. Although not discussed in either published opinion, the agreements in both those eases contained a non-admission of liability, Hobart ASAOC, at 1; RSR Consent Decree, at 3, yet both agreements resolved liability. Whatever the reason for the court’s silence (possibly because the parties failed to bring the term to the court’s attention or because the court considered it immaterial), the omission demonstrates an uneven application of this factor to settlement agreements brought before this Court. This inconsistency should lead the Court to reexamine the use of this factor in determining whether agreements are administrative settlements.
3. Conditional Covenant Not to Sue
Reliance on the Sanford/Orlando AOCs’ conditional covenant not to sue to show unresolved liability accurately follows Hobart, which distinguished the ASAOC at issue in that case with the ITT AOC by noting “the covenant not to sue took effect immediately in this case,” whereas the ITT AOC “required] payment first.” Hobart, 758 F.3d at 770. As explained earlier, this Circuit’s distinction between Hobart’s immediately effective covenant not to sue and a conditional covenant not to sue like in the Sanford/Orlando AOCs misinterprets RSR Corp. But even if it did not, the distinction is problematic because the Hobart ASAOC places its own condition on its covenant not to sue. The Hobart ASAOC provides, “This covenant not to sue shall take effect upon the Effective Date and is conditioned upon the complete and satisfactory performance by Respondents of all obligations under this Settlement Agreement.” Hobart ASAOC, at 28 (emphasis added). The published opinion in Hobart does not acknowledge this conditional language, and therefore this Court cannot infer any binding rule of law from Hobart’s silence on this matter. But the omission reveals a lack of substantive analysis of conditional covenants not to sue and whether they differ from an immediately effective yet still conditional covenant not to sue for purposes of resolving liability under 42 U.S.C. § 9613(f)(3)(B). This discussion hardly matters because of the ruling in RSR Corp. that even fully conditional covenants not to sue may resolve liability. But because a differing interpretation of RSR *1018 Corp. and the conditional covenant not to sue prevailed in this case, it is worth considering whether an immediately effective but still conditional covenant not to sue is substantively different from a fully conditional one.
A condition is a contractual concept that “triggers or negates a duty to render a promised performance.” Condition, Black’s Law Dictionary (10th ed.2014), available at Thomson Reuters Westlaw. A condition is precedent where an obligation does not take effect until the condition occurs. Condition, Black’s Law Dictionary (10th ed.2014), available at Thomson Reuters Westlaw. In the CERCLA settlement context, where a PRP’s obligations are a condition precedent to the EPA’s covenant not to sue, the EPA has “the right to sue up until the point when the PRP completed its obligations.” NCR Corp. v. George A. Whiting Paper, 768 F.3d 682, 691 (7th Cir.2014). In contrast, a condition is subsequent where an obligation takes effect immediately but is discharged upon the happening of the condition. Condition, Black’s Law Dictionary (10th ed.2014), available at Thomson Reuters Westlaw. In terms of an EPA covenant not to sue subject to a condition subsequent, “the defendants are presently vested with the protections of the statute, subject to later divestment if they fail to carry out their part of the agreement with the EPA.” Dravo Corp. v. Zuber, 13 F.3d 1222, 1226 (8th Cir.1994). The covenant not to sue in the Sanford/Orlando AOCs appears subject to a condition precedent, whereas the covenant not to sue in the Hobart ASAOC appears subject to a condition subsequent. The main difference between these two covenants not to sue is the EPA’s theoretical ability under the Sanford/Orlando AOCs to sue while the Progress Energy’s contractual performance is ongoing.[9]
That being said, it is doubtful whether the two types of conditions actually differ in terms of “resolving liability” under 42 U.S.C. § 9613(f)(3)(B). The permanent effectiveness of both covenants not to sue depends upon the PRP’s complete and satisfactory performance. Therefore, both covenants not to sue remain uncertain because of the contingency of complete performance.[10] The PRP under the condition subsequent is susceptible to renewed legal action in the event of incomplete or dissa-tisfactory performance just as the PRP under the condition precedent is susceptible. Our case law’s implicit distinction between the two is therefore confusing for parties entering into a settlement agreement under CERCLA. In addition, it appears to overlook the statutory purpose of a three-year statute of limitations for con *1019 tribution actions arising out of settlement agreements: “to ensure that the responsible parties get to the bargaining — and clean-up — table sooner rather than later.” RSR Corp., 496 F.3d at 559. Delaying the start of the limitations period for settlement agreements with a condition precedent, but not for agreements with a condition subsequent, is incongruous with the statutory purpose to expedite clean-up and litigation. To the extent our case law draws a line for purposes of classifying administrative settlements between immediately effective, conditional covenants not to sue versus fully conditional covenants not to sue, this distinction does not represent a rational basis for deciding which settlement agreements give rise to a contribution action under 42 U.S.C. § 9613(f)(3)(B). Therefore, such a factor should not be used determine whether the Sanford/Orlando AOCs resolved Progress Energy’s liability.
Conclusion
I would affirm the decision of the district court because the Sanford/Orlando AOCs resemble the agreements in RSR Corp. and Hobart in demonstrating the parties’ intent to enter into an administrative settlement, thereby triggering the three-year statute of limitations for Progress Energy’s contribution action.

. Hobart dealt with an administrative settlement, whereas RSR Corp. addressed a judicially approved settlement. Both administrative settlements and judicially approved settlements must "resolve [a potentially responsible party ("PRP”)’s] liability to the United States” to entitle the PRP to a contribution action. 42 U.S.C. § 9613(f)(3)(B).

. The RSR Corp. Consent Decree is available on the Southern District of Ohio’s electronic docket. The case number is 3:89-cv-383, and the consent decree may be found at R.436. Although not on the record in this case, I would take judicial notice of the RSR Corp. Consent Decree as part of the public record of a different case. See Scotty’s Contracting & Stone, Inc. v. United States, 326 F.3d 785, 789 & n. 1 (6th Cir.2003) (taking judicial notice of a brief filed with a court of record in a different case to interpret the holding of that case). Although judicial notice is appropriate only when a fact "is not subject to reasonable dispute,” Fed.R.Evid. 201(b); In re Omnicare, Inc. Securities Litigation, 769 F.3d 455, 465-66 (6th Cir.2014), the language of the RSR Corp. Consent Decree is not subject to reasonable dispute because it is capable of accurate and ready determination from the public docket of the court of record. See Scotty's, 326 F.3d at 789 n. 1.

. Just because this argument was one of several raised by RSR does not mean the issue “was not squarely before the court” or otherwise inconsequential. Maj. Op. at 1007.

. Even if the majority is correct that RSR Corp.’s statement on resolution of liability via an exchange of promises is non-binding or otherwise inapplicable, I would still dissent at least in part. RSR Corp. held that “the statute of limitations runs from the 'entry of the settlement,' 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of the settlement takes effect.” RSR Corp., 496 at 558. In other words, even if the RSR Corp. court accepted the argument that RSR did not resolve its liability until it completed performance, it still would have ruled RSR’s contribution action time-barred because the statute of limitations runs from the date of entry regardless of when the PRP resolves liability. According to this rule, Progress Energy’s contribution action for costs arising under the Sanford AOC is time-barred. Progress Ener *1014 gy completed performance (and, thus, under the majority’s interpretation, resolved liability) under the Sanford AOC in 2009, Appellant Br. 4, but according to the statutory language and RSR Corp., the statute of limitations would still relate back to the date of the Sanford AOC in 1998.

. The majority expresses doubt that Bernstein in fact misinterpreted RSR Corp. In its view, Bernstein drew a reasonable distinction between RSR Corp., where the "parties 'immediately resolv[ed] liability’ based on promises of future action,” and Bernstein, where the parties entered into " ‘a conditional promise to release from liability if and when performance was completed.' ” Maj. Op. at 1008. This analysis rests on the proverbial distinction without a difference. It stretches logic to treat mutual promises of future performance as dispositive in one case (RSR Corp.) but ignore them in another (Bernstein) because of a conditional promise of released liability that was actually present in both cases.

. I maintain that both Hobart's and the majority’s treatment of the conditional covenant not to sue as a sign of unresolved liability contravenes the earlier-decided, binding RSR Corp. But even assuming the majority’s view of the conditional covenant not to sue did not misinterpret RSR Corp., I believe that this Circuit's distinction between Hobart’s immediately effective covenant not to sue versus conditional covenants not to sue is not aligned with the statutory language and has not been consistently applied.

. As with the RSR Corp. Consent Decree, I would take judicial notice of the Hobart AS-AOC as part of the public record in a different case that is not reasonably subject to dispute. See Scotty's, 326 F.3d at 789 & n. 1.

. The majority excludes the Sanford AOC from this comparison because. the Sanford AOC is silent as to admission of liability by Progress Energy.

. Even this difference, however, wanes in importance under the limitation of the contractual duty of good faith and fair dealing, which a party violates by interfering with or failing to cooperate in the other party's performance. Restatement (Second) of Contracts § 205. As long as a PRP is making reasonable and good faith steps towards complete performance, the EPA bringing suit in the middle of performance would likely be a deliberate interference with the PRP’s ability to fulfill the condition precedent (i.e. its complete performance). In such a scenario, the EPA could not rely on the failed condition precedent to avoid its contractual obligation not to sue. See 7A Am.Jur.2d Contracts § 687.

. Even if the EPA’s covenant not to sue contained no condition at all, the EPA could still sue a PRP for breach of contract if the PRP failed to perform its obligations under the settlement agreement. The damages in such an action would theoretically not be significantly different from an action brought directly under CERCLA. Thus, even a unconditional covenant not to sue arguably resolves liability to the same extent as a fully conditional covenant not to sue, since both terms still allow the EPA to sue (for different causes of action) in the event of non-performance.