RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0427p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ITT INDUSTRIES, INC.,

      *Plaintiff-Appellant,*

  *v.*

            No. 06-2393

BORGWARNER, INC., et al.,

      *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 05-00674—Robert Holmes Bell, Chief District Judge.

Argued: September 13, 2007

Decided and Filed: October 18, 2007

Before: MARTIN, GUY, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Scott D. Broekstra, MIKA, MEYERS, BECKETT & JONES, Grand Rapids, Michigan, for Appellant. John J. Bursch, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Scott D. Broekstra, MIKA, MEYERS, BECKETT & JONES, Grand Rapids, Michigan, for Appellant. Daniel P. Lennington, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, Jeffrey K. Haynes, Keith C. Jablonski, BEIER HOWLETT, P.C., Bloomfield Hills, Michigan, for Appellees.

---

## OPINION

---

CLAY, Circuit Judge. Plaintiff, ITT Industries, Inc., appeals an order by the district court dismissing Plaintiff's claims against Defendants arising under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., for failure to state a claim and declining to exercise supplemental jurisdiction over related state law claims. Specifically, Plaintiff appeals the district court's dismissal of its complaint seeking: 1) cost recovery under CERCLA § 107(a) and 2) contribution pursuant to CERCLA § 113(f)(3)(B). For the reasons that follow, we **REVERSE** the district court's dismissal of Plaintiff's cost recovery claim, **AFFIRM** the dismissal of Plaintiff's contribution claim, and **REMAND** for further proceedings consistent with this opinion.

1

**BACKGROUND**

This action arose from Plaintiff's suit to recover costs and contribution from so-called potentially responsible parties ("PRPs") under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., after Plaintiff investigated and addressed hazardous conditions on two sites regulated by the U.S. Environmental Protection Agency ("EPA") in Bronson, Michigan. The sites at issue are (1) Operable Unit One ("OU1") of the North Bronson Industrial Area Superfund Site ("NBIA Site"), and (2) OU1 of the North Bronson Former Facilities Site ("NBFF Site"). As Defendants, Plaintiff named BorgWarner, Inc.; Kuhlman Corporation, a subsidiary of BorgWarner; Bronson Specialties, Inc., a subsidiary of Kuhlman; Royal Oak Industries; and the Elmer Houghton Trust and its trustee, Century Bank and Trust. Defendants are each alleged PRPs under CERCLA inasmuch as they either currently own or operate the sites at issue, or previously owned or operated the sites during the time hazardous substances were released thereon.

Years ago at the NBFF Site, the Bronson Reel Company ("Bronson Reel") manufactured fishing reels, a process that entailed plating and machining of small parts. Bronson Reel was a wholly-owned subsidiary of a company that, in 1949, became known as Higbie Manufacturing Company ("Higbie"). Higbie sold Bronson Reel to Bronson Specialties, Inc. in 1963, and Bronson Specialties discontinued plating operations at the site in 1968. In 1972, nine years after Hibgie sold Bronson Reel, Plaintiff's subsidiary merged with Higbie. It was not until March 2001 that the Michigan Department of Environmental Quality ("MDEQ") discovered trichloroethene ("TCE") in the groundwater north of OU1 of the NBFF Site. Bronson Specialties, Inc. currently owns OU1 of the NBFF Site. Yet, as a corporate successor to Bronson Reel and Higbie, EPA considered Plaintiff a PRP.

On September 30, 2002, Plaintiff voluntarily entered into an Administrative Order by Consent with the EPA (hereinafter "AOC") with respect to the NBFF Site. The AOC was executed pursuant to §§ 122(a) and 122(d)(3) of CERCLA. The AOC did not undergo public notice and comment. By its terms, the AOC required Plaintiff to perform a Streamlined Remedial Investigation and Focused Feasibility Study ("SRI/FFS") on the NBFF Site. Specifically, the AOC directed Plaintiff to "focus on determining if a source for [TCE] in groundwater exists" at the NBFF Site. Plaintiff completed extensive soil and groundwater sampling, which revealed hazardous substances. On June 2, 2005, Plaintiff issued its Streamlined Remedial Investigation Report (hereinafter "Streamlined Report"), wherein it noted "some suggestion that a TCE source might exist at the former Bronson Reel facility and that additional investigation was needed to determine if the Site was the source of this TCE." The Streamlined Report reflects that Plaintiffs identified only low concentrations of contaminants remaining on the NBFF Site and indicates that no additional remedial action would be required. Plaintiff incurred approximately $2 million in costs in connection with the NBFF Site.

The NBIA Site consists of a series of lagoons, an industrial sewer, and a county drain located approximately one-half mile from the NBFF Site. In 1939, the City of Bronson developed the lagoons to hold plating waste from nearby manufacturers, and among these, Bronson Reel. The manufacturers funded the construction of an industrial sewer system, and upon completion, plating wastes traveled through the industrial sewer to the lagoons. The State of Michigan initiated a Remedial Investigation and Feasibility Study of the NBIA Site in September 1988. The State released its Remedial Investigation Report in September 1993, and subsequently issued a Feasibility Study Report and a plan for remedial action. The MDEQ's plan for remedial action was extensive, requiring excavation of contaminated soil and sediment, consolidation of contaminated waste to control its spread, treatment of contaminated groundwater and discharge of treated water in accordance with state and federal regulations, and filling excavated portions of the site with clean soil. In March 1999, Plaintiff entered into a Consent Decree (hereinafter "NBIA Consent Decree")

with several other parties to perform the necessary remedial action. Plaintiff did so without admitting liability. In connection with remedial efforts at the NBIA Site, Plaintiff incurred substantial costs, to the tune of approximately $1.6 million. Plaintiff alleges that Defendants rightfully bear responsibility for some portion of the response costs "for discharges of hazardous substances to the western lagoons and County Drain No. 30." (J.A. at 13)

On September 29, 2005, Plaintiff filed suit in the Western District of Michigan. Plaintiff's six-count complaint alleged (1) a cost recovery claim under CERCLA § 107(a) (Count I); (2) an action for contribution pursuant to CERCLA § 113(f)(3)(B) (Count II); (3) a cost recovery claim under Michigan's Natural Resources and Environmental Protection Act, M.C.L. § 324.20101 et seq. (Count III); (4) a contribution action under M.C.L. § 324.20126a (Count IV); (5) a common law public nuisance claim (Count V); and (6) a claim to recover a statutory contribution pursuant to M.C.L. § 600.2925(a) (Count VI). Defendants moved to dismiss Plaintiff's complaint for failure to state a claim.

On August 23, 2006, the district court granted Defendants' motion to dismiss as to Counts I and II of Plaintiff's complaint, and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. *ITT Indus., Inc. v. BorgWarner, Inc.*, No. 1:05-CV-674, 2006 WL 2460793 (W.D. Mich. Aug. 23, 2006) (hereinafter "*ITT Industries I*"). The district court concluded that this Court's decision in *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998), precludes Plaintiff's claim for cost recovery pursuant to § 107(a) since Plaintiff is a PRP. *ITT Industries I*, 2006 WL 2460793, at * 5. With respect to Count II, the district court held that Plaintiff was time-barred from asserting a § 113(f)(3)(B) contribution action for the NBIA Site. *Id.* at *6. No contribution action could be sustained for the NBFF Site, the court said, because the AOC did not resolve CERCLA liability and did not constitute a settlement under § 113(f)(3)(B). *Id.* at *6-7. Plaintiff filed a Rule 59(e) motion to alter or amend judgment, which the district court subsequently denied on September 28, 2006. *ITT Indus., Inc. v. BorgWarner, Inc.*, No. 1:05-CV-674, 2006 WL 2811310 (W.D. Mich. Sept. 28, 2006) (hereinafter "*ITT Industries II*"). Plaintiff timely appealed to this Court.

## DISCUSSION

## I.     CERCLA COST RECOVERY AND CONTRIBUTION FRAMEWORK

Broadly speaking, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response actions to the parties responsible for releasing hazardous substances. *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1500 (6th Cir. 1989) (citing H. Rep. No. 1016(I), 96th Cong., 2d Sess. 22, *reprinted in* 1980 U.S.C.C.A.N. 6119, 6125); *Walls v. Waste Resource Corp.*, 823 F.2d 977, 981 (6th Cir. 1987) ("[T]he statute was designed primarily to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes."). To that end, CERCLA initially provided for cost recovery under § 107.

Although CERCLA itself does not employ the term PRP, it does set forth four categories of parties subject to liability:

(1) the current owner or operator of a waste facility; (2) any previous owner or operator during any time in which hazardous substances were disposed at a waste facility; (3) any person who arranged for disposal or treatment of hazardous substances at the waste facility; and (4) any person who transported hazardous substances to a waste facility.

*Centerior*, 153 F.3d at 347 n.8 (citing 42 U.S.C. § 9607(a)(1)-(4)). Section 107(a)(4) makes PRPs liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe," and for "any other necessary costs of response incurred by any other person." CERCLA § 107(a)(4)(A)-(B); 42 U.S.C. § 9607(a)(4)(A)-(B). Thus, while the government may recover costs from PRPs under subsection (A), § 107(a)(4)(B) creates an implied *private* right of action to recover "necessary costs of response." *Id.*; *Centerior*, 153 F.3d at 347; *Walls v. Waste Resource Corp.*, 761 F.2d 311, 318 (6th Cir. 1985). In addition to creating an action for cost recovery, courts initially read § 107(a)(4)(B) to create "an implied right of action for contribution for PRPs who had been sued under § 107, but had incurred response costs in excess of their pro rata share." *Centerior*, 153 F.3d at 348; *see also Walls*, 761 F.2d at 318-19 (permitting plaintiffs who incurred response costs to seek cost recovery from alleged responsible parties under § 107).

In 1986, Congress enacted the Superfund Amendments and Reauthorization Act ("SARA"), which amended CERCLA. SARA, Pub. L. No. 99-499, 100 Stat. 1613 (1986). As part of these amendments, Congress created an express right of contribution, as follows:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1); *see also Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 162 (2004); *Key Tronic Corp. v. United States*, 511 U.S. 809, 816 (1994). As this Court acknowledged in *Centerior*, "after the adoption of SARA, controversy arose regarding whether PRPs who themselves contributed to the contamination of a hazardous waste site could seek joint and several cost recovery as well as contribution." *Centerior*, 153 F.3d at 349.

In the intervening years, courts continued to grapple with the remedy applicable to PRPs based on a perceived friction between the two remedies for recoupment of costs associated with contamination cleanup. The Supreme Court addressed this question in part in *Cooper Industries* and, more recently, in *United States v. Atlantic Research Corp.*, 127 S. Ct. 2331 (2007), cases that will be discussed at greater length below.

## II.    DISMISSAL OF PLAINTIFF'S COST RECOVERY CLAIM UNDER § 107(a)

### A.    Standard of Review

This Court reviews a district court's grant of a Rule 12(b)(6) motion *de novo*. *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). In so doing, this Court "construe[s] the complaint in the light most favorable to the plaintiff, [and] accept[s] all of the complaint's factual allegations as true." *Id.* Additionally, to the extent that the instant case involves statutory interpretation and construction, this Court reviews such questions of law *de novo*. *United States v. Spinelle*, 41 F.3d 1056, 1057 (6th Cir. 1994).

### B.          Section 107(a) Cost Recovery Claim

In dismissing Count I of the Plaintiff's complaint, the district court concluded that this Court's holding in *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998), bars Plaintiff, as a PRP, from bringing a cost recovery claim pursuant to § 107(a). *ITT Industries I*, 2006 WL 2460793, at * 5. In *Centerior,* the court found that while any party may seek response costs for contamination cleanup, "[c]laims by PRPs . . . seeking costs from other PRPs are necessarily actions for contribution, and are therefore governed by the mechanisms set forth in § 113(f)." *Id.* at 350.[1] In other words, the court held that with few exceptions, § 113(f) serves as the primary remedy for PRPs seeking to recoup cleanup costs. To reach this conclusion, the court read §§ 107(a) and 113(f) together, noting that "parties seeking contribution under § 113(f) must look to § 107 to establish the basis and elements of the liability of the defendants, as well as any defenses to that liability." *Id.* Thus, the district court concluded that Plaintiff failed to state a valid claim for cost recovery under CERCLA § 107(a). *ITT Industries I*, 2006 WL 2460793, at * 5.

On appeal, Plaintiff continues to assert that it has a viable cost recovery claim under § 107(a). Indeed, recent events bolster this assertion. While this action was pending, the Supreme Court decided *United States v. Atlantic Research Corp.*, which held that CERCLA provides PRPs with a cause of action to recover costs incurred from remedial action regarding a contaminated site under § 107(a). 127 S.Ct. at 2336. Based on the plain language of the statute, the Court found that the phrase "any person," as used in the context of § 107(a)(4)(B), captured all plaintiffs, including those who were classified as PRPs. *Id.* ("[T]he plain language [of § 107(a)(4)(B)] authorizes cost-recovery actions by any private party, including PRPs.").

Moreover, contrary to *Centerior's* interdependent construction of the statute, *Atlantic Research* reiterated that the remedies provided under CERCLA are "clearly distinct." *Id.* at 2337 (citing *Cooper Industries*, 543 U.S. at 163 n. 3). Therefore, the appropriateness of a §107(a) cost recovery or § 113(f) contribution action varies depending on the circumstances leading up to the action, not the identity of the parties. *Id.* at 2338. ("The remedies available in §§107(a) and 113(f) compliment each other by providing causes of action to persons in different procedural circumstances." (internal citations omitted)).

To distinguish when a cost recovery action under § 107(a) is appropriate, as opposed to a contribution action under § 113(f), the Court noted that a § 107(a) action may lie where a party has itself "incurred" cleanup costs as opposed to reimbursing costs paid by other parties, which is more appropriately covered by § 113(f). *See Atlantic Research Corp.*, 127 S.Ct. at 2338. To maintain the vitality of § 113(f), however, PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f). *Id.; but see* 127 S.Ct. at 2338 n.6 (acknowledging possible overlap).

Although *Atlantic Research* was not decided at the time the district court dismissed Plaintiff's claims, it is now controlling precedent. Thus, Plaintiff, as a PRP, may now state a claim for cost recovery upon which relief can be granted. Therefore, we find it prudent to remand this action to the district court for further consideration in light of the Supreme Court's decision in *Atlantic Research*. We express no opinion as to how Plaintiff's cost recovery action ultimately

---

[1]Under *Centerior*, actions by parties not responsible for contamination were deemed to be "joint and several cost recovery actions governed exclusively by §107." *Centerior*, 153 F.3d at 350.

should be resolved. Rather, we leave it to the district court to entertain this question in light of *Atlantic Research*.[2]

### III.     DISMISSAL OF PLAINTIFF'S CONTRIBUTION CLAIM UNDER § 113(f)

With respect to Count II, the district court held that Plaintiff was time-barred from asserting a § 113(f)(3)(B) contribution action for the NBIA Site.[3] *ITT Industries I*, 2006 WL 2460793, at * 6. No contribution action could be sustained for the NBFF Site, the court said, because the AOC did not resolve CERCLA liability and did not constitute a settlement under § 113(f)(3)(B). *Id*. at *6-7. We agree.

Regarding the NBFF Site, Plaintiff argues on appeal that its AOC with the EPA constitutes an administratively approved settlement within the meaning of § 113(f)(3)(B) and, thus, that it can seek contribution from PRPs who were not party to the AOC. Section 113(f)(3)(B) provides that

> [a] person who has resolved its liability to the United States . . . for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement [to] seek contribution from any person who is not party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f)(3)(B). Thus, as an initial matter, § 113(f)(3)(B) requires that parties resolve "some or all" of their liability as to the United States. *Id*.

Plaintiff argues that the district court erred in finding that a settlement must be a final resolution of *all* CERCLA liability rather than an interim agreement that resolves *some* of its liability. Indeed, Plaintiff is correct inasmuch as § 113(f)(3)(B) allows for contribution based on agreements which partially resolve CERCLA liability. Upon review of the AOC, we find that the Plaintiff has not resolved any of its liability to the United States in two respects.

First, the EPA expressly reserves its rights to legal action to adjudicate Plaintiff's liability for failure to comply with the AOC, for costs of response (past, present or future), for costs of injunctive relief or enforcement, criminal liability, and other damages. Despite this, Plaintiff maintains that it has resolved its liability to the United States with respect to the SRI/FFS and oversight costs. Such a resolution of liability, however, is undermined by the fact that should the EPA disapprove of Plaintiff's SRI/FFS Work Plan, "U.S. EPA retains all of its rights under this Consent Order and CERCLA, including, but not limited to, the right to terminate this Consent Order, complete all SRI/FFS activities, and obtain reimbursement . . . ." (J.A. at 313)

---

[2]Defendants also argue that Plaintiff's cost recovery claim must be dismissed based on Plaintiff's failure to demonstrate that Defendants were responsible for contamination in its Streamlined Study. However, given that this appeal arises from a dismissal for failure to state a claim, we construe all allegations in a light most favorable to non-moving party and accept all allegations as true. Here, Plaintiff has alleged that Defendants are responsible for contamination at both sites. We note that discovery has not proceeded on this claim.

[3]We note that Plaintiff did, in fact, concede before the district court that its § 113 contribution claim with respect to the NBIA Site is time-barred. The statute of limitations for asserting a contribution claim under that section is three years, and it begins to run on "the date of . . . entry of a judicially approved settlement." 42 U.S.C. § 9613(g)(3)(B). Plaintiffs entered into the Consent Decree in March 1999, and filed the suit at hand in September 2005. Accordingly, the district court correctly concluded that Plaintiff's § 113 claim with respect to the NBIA Site was out of time. Plaintiff does not dispute this on appeal.

Defendants argue that Plaintiff conceded that both the § 113(f) and the § 107(a) claims for the NBIA Site were time barred, but the record shows that Plaintiff's counsel clarified at the motion hearing that the concession was only as to the § 113(f) contribution claim. No findings were made as to waiver or timeliness of the § 107(a) claim in the district court, and we will not decide the issue in the first instance.

Second, Plaintiff has repeatedly made clear in its briefing to this Court that it has not conceded the question of liability as part of its settlement with the EPA. Further, the AOC states that Plaintiff's "participation in this Consent Order does not constitute an admission of liability or of U.S. EPA's Findings of Fact or Conclusions of Law and Determinations contained in this Consent Order." (J.A. at 305) In view of these reservations, it is clear that the AOC does not resolve the question of Plaintiff's liability with respect to contamination at the NBFF Site. Thus, the AOC may not serve as a basis for a contribution action pursuant to § 113(f)(3)(B).

Moreover, to sustain a contribution action, the AOC must constitute an "administrative or judicially approved settlement" within the meaning of § 113(f)(3)(B). Section 113(f) does not define the phrase "administrative or judicially approved settlement." We have yet to construe an Administrative Order by Consent under this section and district courts which have considered the question have come to differing results. *Compare ITT Industries I*, 2006 WL 2460793, at \*5 (AOC not an administrative settlement for purposes of § 113(f)(3)(B)), *with Responsible Environmental Solutions Alliance v. Waste Management, Inc.*, 493 F.Supp. 2d 1017 (S.D. Ohio 2007) (finding that an AOC under § 122 between the plaintiffs and the EPA constituted a settlement for purposes of § 113(f)(3)(B)).

To resolve such questions, *Cooper Industries* directs courts to read the phrase "administrative or judicially approved settlement" in concert with subsection (g), which establishes time limitations applicable to contribution actions. *See Cooper Industries*, 543 U.S. at 167 (looking to the whole of § 113, and specifically § 113(g), to discern the meaning of § 113(f)). Section 113(g)(3) provides that –

No action for contribution for any response costs or damages may be commenced more than 3 years after . . . (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3). Thus, an "administrative or judicially approved settlement" includes settlements pursuant to §§ 122(h) and 122(g) of CERCLA. *See Cooper Industries*, 543 U.S. at 167; 42 U.S.C. § 9613(g)(3).

In reading the requirements of §113 as a whole, we find that the AOC does not fall within the §§ 122(g) or 122(h) settlements as required by the statute of limitations as enumerated under § 113(g), as it was executed pursuant to § 122(a)[4]. *See id.* In the instant case, Plaintiff entered into the AOC for the NBFF Site with the EPA pursuant to §§ 104, 107 and 122 of CERCLA.

---

[4]Section 122(a) provides that:

> [t]he President, in his discretion, may enter into an agreement with any person (including the owner or operator of the facility from which a release or substantial threat of release emanates, or any other potentially responsible person), to perform any response action (including any action described in section 9604(b) of this title) if the President determines that such action will be done properly by such person. Whenever practicable and in the public interest, as determined by the President, the President shall act to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order to expedite effective remedial actions and minimize litigation. If the President decides not to use the procedures in this section, the President shall notify in writing potentially responsible parties at the facility of such decision and the reasons why use of the procedures is inappropriate. A decision of the President to use or not to use the procedures in this section is not subject to judicial review.

42 U.S.C.A. § 9622(a).

Specifically, in its conclusions of law, the AOC cites §§ 104(a)(1) and 122(a) of CERCLA, and finds that "[t]he actions required by [the AOC] are necessary to protect the public health, welfare, or the environment, and are consistent with the NCP" and those provisions of CERCLA. (J.A. at 66)  Thus, under *Cooper Industries*' narrower reading of § 113(f), we must interpret § 113(g)'s omission of settlements reached pursuant to § 122(a) to mean that settlements under that subsection are insufficient to constitute an administratively approved settlement under § 113(f)(3)(B).

Lastly, the AOC provides that Plaintiff is responsible for cleanup costs.  In accordance with the terms of the AOC, Plaintiff is not simply reimbursing the United States for costs it "incurred;" thus, this seems to contravene the distinction drawn by the Supreme Court in *Atlantic Research* and *Cooper Industries* regarding actions appropriately governed by § 107(a) (i.e., where PRP incurs direct costs) versus § 113(f) (i.e., those where a PRP is reimbursing a third party for recovery costs).  *See Atlantic Research*, 127 S.Ct. at 2338.  We therefore find that the AOC does not constitute an administratively approved settlement and affirm the district court's dismissal of Plaintiff's contribution action under § 113(f)(3)(B).

## CONCLUSION

For the reasons stated herein, this Court **REVERSES** the district court's dismissal of Count I of Plaintiff's complaint pertaining to Plaintiff's cost recovery claim, **AFFIRMS** the district court's dismissal of Count II of Plaintiff's complaint pertaining to Plaintiff's contribution claim, and **REMANDS** for further proceedings consistent with this opinion.