GRIFFIN, J., delivered the opinion of the court in which STAFFORD, D.J., joined. SUHRHEINRICH, J. (pp. 1010-19), delivered a separate dissenting opinion.
OPINION
GRIFFIN, Circuit Judge.
Almost seventy years ago, plaintiffs predecessor in interest owned and operated two coal gasification plants in Florida. In 1998 and 2003, plaintiff entered into Administrative Orders by Consent (“AOCs”) with the U.S. Environmental Protection Agency to assess the feasibility of remediation of environmental contamination at those sites. At issue in this case is the narrow legal question of whether those AOCs constitute “administrative settlements” for purposes of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (“CERCLA”), 42 U.S.C § 9601 et seq. We hold that they do not. We therefore reverse the district court’s dismissal of plaintiffs contribution action based on the statute of limitations and remand for further proceedings.
I.
This case involves two Florida plants, one in Sanford and the other in Orlando. After discovering hazardous contaminants *999 on those sites in the 1990s, the EPA concluded that plaintiff Florida Power Corporation, along with other previous owners of those sites, was liable for costs associated with removal and remediation of contamination. In 1998, plaintiff entered into an “Administrative Order by Consent for Remedial Investigation/Feasibility Study” with the EPA for the Sanford site (“Sanford AOC”). In 2003, it entered into a similar agreement of the same title for the Orlando site (“Orlando AOC”).
Under the terms of the AOCs, plaintiff agreed to conduct and implement a remedial investigation and feasibility study for each site. The remedial investigation was intended to determine the nature and extent of the public safety threat. The feasibility study was designed to identify and evaluate options for remedial action. The AOCs established a plan for implementation and set monetary penalties for violating the plan. Plaintiff also agreed to pay the EPA $429,731.23 for past response costs it had incurred at the Sanford site and $104,751.46 for such costs at the Orlando site. Following completion of the investigation and study at the Sanford site, the EPA entered three Records of Decision — in 2000, 2001, and 2006. On January 16, 2009, the U.S. District Court for the Middle District of Florida approved a consent decree between plaintiff and the EPA for actual performance of remediation at the Sanford site. Regarding the Orlando site, plaintiff submitted a draft Remedial Investigation Report, Risk Assessment, and Remedial Alternative Technical Memorandum that was under review by the EPA at the time of this litigation.
On December 30, 2011, plaintiff filed this cost recovery and contribution CERCLA action in the Middle District of Florida for costs related to both sites. It also sought a declaratory judgment that defendant, as a successor in interest to a former owner-operator of the sites, was liable for future response costs that plaintiff would incur. Upon defendant’s motion, the case was transferred to the Northern District of Ohio. Defendant moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the basis that the 1998 and 2003 AOCs had triggered CERCLA’s three-year statute of limitations and plaintiffs claims were therefore barred. Initially, the district court denied the motion on the grounds that the Sanford AOC was not a settlement agreement because it did not release any party from any liability and preserved the EPA’s right to sue plaintiff for CERCLA violations. Regarding the Orlando AOC, the court ruled that plaintiff could only bring a cost recovery action because the AOC “by its own terms, was not a settlement agreement.”
However, on reconsideration, following our decision in Hobart Corp. v. Waste Management of Ohio, Inc., 758 F.3d 757 (6th Cir.2014), the district court reversed itself and dismissed plaintiffs claims because it concluded the AOCs at issue resembled the settlement agreement in Hobart and therefore triggered the statute of limitations. We disagree and, for the reasons stated herein, reverse and remand for further proceedings.
II.
A.
“The district court’s decision regarding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed using the same de novo standard of review employed for a motion to dismiss under Rule 12(b)(6).” Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir.2008). We take as true all well-pleaded material allegations in the opposing party’s pleadings, and affirm the district court’s grant *1000 of the motion only if the moving party is entitled to judgment as a matter of law. JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir.2007).
Broadly speaking, CERCLA “facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response actions to the parties responsible for releasing hazardous substances.” ITT Indus., Inc. v. BorgWarner, Inc., 506 F.3d 452, 456 (6th Cir.2007); see Walls v. Waste Res. Corp., 823 F.2d 977, 981 (6th Cir.1987). The statute imposes liability on several categories of potentially responsible parties (“PRPs”), including current owners or operators of a contaminated facility, owners or operators of a facility at the time hazardous substances were disposed, any person who arranged for disposal of such hazardous substances at a facility, and any person who accepted such hazardous substances for transport to disposal or treatment facilities. 42 U.S.C. § 9607(a)(l)-(4). When the EPA identifies a contaminated site, it has several options. It may clean up the site itself under CERCLA § 104, 42 U.S.C. § 9604, compel a PRP to clean up the site under § 106, id. § 9606, or enter into an agreement under § 122 by which a PRP agrees to clean up the site, id. § 9622. Hobart, 758 F.3d at 762.
CERCLA provides two express cost-shifting actions for costs incurred in remediating a site. Under the “cost recovery” provision of CERCLA § 107(a)(4), the EPA may bring an action against PRPs to recover “all costs of removal or remedial action incurred by the United States Government.” 42 U.S.C. § 9607(a)(4)(A). A PRP that cleans up a site may likewise bring a cost recovery action against other PRPs. See id. § 9607(a)(4)(B); ITT Indus., 506 F.3d at 456. This cause of action “grants one PRP the same rights as an innocent party to sue another PRP for cleanup costs incurred in a removal or remedial action.” Bernstein v. Bankert, 733 F.3d 190, 201 (7th Cir.2013) (citing United States v. Atl. Research Corp., 551 U.S. 128, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007)). The second cost-shifting option is a “contribution” action under CERCLA § 113(f)(1). 42 U.S.C. § 9613(f)(1). “Contribution.is defined as the ‘tortfeasor’s right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.’ ” Atl. Research Corp., 551 U.S. at 138, 127 S.Ct. 2331 (quoting Black’s Law Dictionary 353 (8th ed.2004)).
To proceed with a contribution action, a plaintiff must satisfy one of two statutory conditions. Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 162-63, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004); see Hobart, 758 F.3d at 767. First, a plaintiff may sue for contribution after the government has compelled it to clean a site or after the government (or a private party) has brought a cost recovery action against the plaintiff. 42 U.S.C. § 9613(f)(1); Cooper Indus., 543 U.S. at 166-67, 125 S.Ct. 577; Hobart, 758 F.3d at 762. Second, at issue here, a plaintiff may sue for contribution after the government has responded to a hazardous site itself and then entered a settlement agreement with a plaintiff to compensate the government for its response costs. Cooper Indus., 543 U.S. at 167, 125 S.Ct. 577; Hobart, 758 F.3d at 768. In that case, a plaintiff may proceed against other PRPs who were not parties to the settlement if the plaintiff “has resolved its liability to the United States ... for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement.” 42 U.S.C. § 9613(f)(3)(B).
*1001 Recovery and contribution actions apply to “persons in different procedural circumstances,” Atl. Research Corp., 551 U.S. at 139, 127 S.Ct. 2331, and “provide mutually exclusive remedies,” Hobart, 758 F.3d at 768. Unlike a cost recovery action — in which a party seeking reimbursement of response costs need not be liable to a third party, such as the EPA — a party seeking contribution must already be hable to a third party. See id. Recovery actions allow a plaintiff to recoup only “necessary costs of response incurred by that party.” 42 U.S.C. § 9607(a)(4)(B). However, a plaintiff does not “incur” its own response costs when it pays to satisfy a settlement agreement or court judgment; rather, it reimburses other parties for the costs they incur. Atl. Research Corp., 551 U.S. at 139, 127 S.Ct. 2331. Thus, a plaintiff that has entered settlement may only bring a contribution action against other PRPs, not a cost recovery action. Hobart, 758 F.3d at 767.
The effective date of a settlement agreement under CERCLA § 113(f)(3)(B) triggers the running of a three-year statute of limitations for a contribution action. Hobart, 758 F.3d at 775. However, to trigger the statute of limitations, an agreement must constitute an “administrative or judicially approved settlement” within the meaning of § 113(f)(3)(B). See 42 U.S.C. § 9613(f)(3)(B). The “defining feature of an ‘administrative settlement’ is that the agreement ‘resolve[s] [the PRP’s] liability to the United States ... for some or all of a response action or for some or all of the costs of such action.’ ” Hobart, 758 F.3d at 768 (quoting 42 U.S.C. § 9613(f)(3)(B)).
To determine whether the agreement resolves a PRP’s liability, we look to the specific terms of the agreement. Id. at 770. “Whether or not liability is resolved through a settlement simply is not the sort of question which can or should be decided by a universal rule. Instead, it requires a look at the terms of the settlement on a case-by-case basis.” Bernstein, 733 F.3d at 213. In interpreting the agreement, we apply state contract law. Hobart, 758 F.3d at 768. Under Florida law, “the actual language of the [contract] is the best evidence of the parties’ intent, and its plain meaning controls.” MDS (Canada) Inc. v. Rad Source Techs., Inc., 143 So.3d 881, 890 (Fla.2014); see also Richland Towers, Inc. v. Denton, 139 So.3d 318, 321 (Fla.Dist.Ct.App.2014) (observing that courts must “construe the agreement according to its plain language and consider the provisions at issue in the context of the entire agreement in order to achieve a reasonable construction to accomplish the intent and purpose of the parties”).
B.
Plaintiff maintains that the district court erred in concluding that the statute of limitations barred its contribution action because the Sanford and Orlando AOCs do not resolve plaintiffs liability to the EPA. Plaintiff argues that the AOCs closely resemble the agreement in ITT Industries, Inc. v. BorgWarner, Inc., 506 F.3d 452, and in the Seventh Circuit case Bernstein v. Bankert, 733 F.3d 190—consent orders that did not resolve liability to the EPA and were therefore not administrative settlements under § 113(f)(3)(B).
In ITT, the plaintiff voluntarily entered into a 2002 “Administrative Order by Consent” with the EPA to perform a remedial investigation and feasibility study on a contaminated site in Michigan. 506 F.3d at 455. Shortly before the anticipated three-year statute of limitations expired, the plaintiff filed a lawsuit for cost recovery and contribution. Id. The plaintiff argued that the AOC was an “administrative settlement” for purposes of a contribution *1002 action under § 113(f)(3)(B). Like the district court, we disagreed, holding that the AOC did not resolve any of the plaintiffs liability for at least two' reasons. First, the EPA broadly reserved its rights to take legal action to adjudicate the plaintiffs liability for failure to comply with the AOC, for costs of response (past, present, or future), for costs of injunctive relief or enforcement, criminal liability, and other damages. Id. at 459. Second, the plaintiff had not conceded the question of its liability, and the AOC expressly stated that the plaintiffs “participation in this Consent Order does not constitute an admission of liability.” Id. at 460.
The Seventh Circuit case, Bernstein, is especially illuminating because it involved two distinct AOCs at different stages of performance. There, the plaintiffs entered into an “Administrative Order by Consent” in 1999 to study removal alternatives at a contaminated site in Indiana and established a trust to reimburse the EPA for past response and oversight costs, as well as future oversight costs. 733 F.3d at 196-97; see also Bernstein v. Bankert, 702 F.3d 964, 970 (7th Cir.2012), opinion amended and superseded on rehearing, 733 F.3d 190. The plaintiffs fully performed their obligations, and the EPA approved their actions in 2000. 702 F.3d at 970. In 2002, the plaintiffs entered into a second, substantially similar “Administrative Order by Consent” with the EPA to perform hazardous material removal at the site. Id. at 970-71. The plaintiffs filed a lawsuit in 2008 for cost recovery and declaratory judgment, as well as state-law claims. Id. at 971. The district court construed the cost recovery action as a contribution action and dismissed it as barred by the statute of limitations. Id. at 971-72.
On appeal, the plaintiffs argued that their claims were correctly pleaded as cost recovery actions. The Seventh Circuit agreed with respect to the 2002 AOC, but not the 1999 AOC: first, it held that the plaintiffs had a time-barred contribution action based on the 1999 AOC because the AOC resolved at least some of the plaintiffs’ liability upon complete performance in 2000 (the date of the EPA’s approval), thereby triggering the statute of limitations. Id. at 978-81. Second, regarding the 2002 AOC, the court held that the statute of limitations had not yet begun to run. Specifically, the court observed that “there can be no meaningful argument” that the 2002 AOC resolved the plaintiffs’ liability because performance was ongoing at the time of litigation and the EPA expressly conditioned its covenants not to sue or take administrative action “upon the complete and satisfactory performance by [plaintiffs] of their obligations under [the AOC].” Id. at 977, 983.
At the defendants’ request, the Bernstein court granted panel rehearing to clarify issues raised by the EPA as amicus curiae with respect to whether parties may structure an administrative settlement with the EPA to immediately resolve liability. 733 F.3d at 196. In its resulting opinion, the Seventh Circuit explained that a responsible party “may obtain an immediately effective release from the EPA in a settlement, or it may obtain only a performance-dependent conditional covenant not to sue with an accompanying disclaimer of any liability.” Id. “Whether, and when, a given settlement ‘resolves’ a party’s liability to the EPA within the meaning of 42 U.S.C. § 9613(f)(3)(B) is ultimately a case-specific question dependent on the terms of the settlement before the court.” Id. The court emphasized that the defendants and the EPA erred in equating the signing of an AOC with the resolution of liability. Id. at 210. Applying traditional rules of statutory interpretation, it explained that “liability [is] ‘resolved’ when *1003 the issue of liability is decided, in whole or in part, in a manner that carries with it at least some degree of certainty and finality.” Id. at 212 (emphasis in original). In short, “[t]o meet the statutory trigger for a contribution action under § 9613(f)(3)(B), the nature, extent, or amount of a PRP’s liability must be decided, determined, or settled, at least in part, by way of agreement with the EPA.” Id. (emphasis omitted).
Applying these principles, the Seventh Circuit again held that the 2002 AOC did not resolve the plaintiffs’ liability for two reasons. First, the court observed that the plaintiffs refused to consider the AOC to be an admission of liability, citing a provision of the AOC stating that it “shall not constitute any admission of liability by any (or all) of [the plaintiffs].” Id. at 203-04, 212. Second, “the EPA only conditionally promised to release [the plaintiffs] from liability” upon complete performance of the AOC and certification of such promise. Id. at 212 (emphasis in original). The court reasoned that this conditionality meant that if resolution of liability was intended, it “would not occur until performance was complete, which is the first time at which the covenant would have any effect.” Id. In support of its reading, the court observed that the EPA “expressly reserved its right to seek legal or equitable relief to enforce the terms of the Order at any time before those covenants went into effect.” Id. at 212-13 (internal quotation marks and alterations omitted). In making this observation, the court clarified that, “if the EPA had included an immediately effective promise not to sue as consideration for entering into the agreement, the situation would be different.” Id. at 213. But, in Bernstein, that was not the case. In summary, the Seventh Circuit observed: “The parties to a settlement may choose to structure their contract so that liability is resolved immediately upon execution of the contract. Or, the parties may choose to leave the question of liability open through the inclusion of reservations of rights, conditional covenants, and express disclaimers of liability. In this case, the parties clearly chose to do the latter — a choice which the EPA typically has great weight to influence.” Id. at 213-14 (internal citations omitted).
C.
Like the agreements in ITT and Bernstein, the Sanford and Orlando AOCs do not resolve plaintiffs liability because resolution of liability is conditioned on plaintiffs performance and does not take immediate effect. In both the Sanford and Orlando AOCs, the EPA broadly reserved its “right to take any enforcement action pursuant to CERCLA or any other available legal authority ... for any violation of law or this Consent Order.” This language resembles that of the ITT AOC, which reserved the EPA’s “right to take any other legal or equitable action as it deems appropriate and necessary.” ITT AOC, at 20. It also reflects the AOC in Bernstein, in which the EPA conditionally “covenanted] not to sue [the plaintiffs] for judicial imposition of damages or civil penalties or to take administrative action against [the plaintiffs] for any failure to perform actions agreed to in this Order,” and further, “in consideration and upon [the plaintiffs’] payment of the EPA’s response costs, ... covenanted] not to sue or take administrative action against [the plaintiffs] under Section 107(a) of CERC-LA.” 733 F.3d at 203. In Bernstein, those covenants were expressly “conditioned upon the complete and satisfactory performance” of the AOC by plaintiffs. Id.
Moreover, to the extent the Sanford and Orlando AOCs expressly address the resolution of plaintiffs liability, they provide:
*1004 Following satisfaction of the requirements of this Consent Order, [plaintiff] shall have resolved [its] liability to EPA for the performance of the [remedial investigation/feasibility study] that is the subject of this Order. [Plaintiff is] not released from liability, if any, for any actions taken beyond the terms of this Order regarding removals, other operable units, remedial design/remedial action (RD/RA), or activities arising pursuant to section 121(c) of CERCLA.
This language goes a step beyond the conditional covenants not to sue and reservation of rights in ITT and Bernstein to explicitly condition the resolution of liability on performance.
The dissenting opinion suggests that because the parties included any reference to the resolution of liability, wé should infer that they intended to resolve plaintiffs liability. That interpretation, however, ignores the context in which the reference is made. The AOCs do not provide that plaintiff has “resolved its liability to the EPA as of the effective date of this agreement,” but rather state, “Hollowing satisfaction of the requirements of this Consent Order, [plaintiff] shall have resolved [its] liability to the EPA____” The phrase is better interpreted as conditioning the resolution of plaintiffs liability on plaintiffs performance. To conflate these phrases would compromise the meaning of the parties’ chosen language.
As to the admission of liability by plaintiff, the Sanford AOC is silent. The Orlando AOC, however, provides that “participation of [plaintiff] in this Order shall not be considered' an admission of liability.” This provision parallels the non-admission of liability provisions in the ITT and Bernstein AOCs. See ITT, 506 F.3d at 460 (“participation in this Consent Order does not constitute an admission of liability”); Bernstein, 733 F.3d at 204 (the plaintiffs’ agreement “shall not constitute any admission of liability”). In short, there are no material differences between the AOCs in ITT and Bernstein that warrant a different outcome in this case. We therefore hold that the Sanford and Orlando AOCs do not resolve plaintiffs liability for purposes of CERCLA § 113(f)(3)(B).
Our recent case of Hobart Corp. v. Waste Management of Ohio, Inc., 758 F.3d 757, reinforces this conclusion. In that case, we considered whether a 2006 Administrative Settlement and Order on Consent (“ASAOC”) with the EPA constituted an “administrative settlement” for purposes of CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B). Hobart, 758 F.3d at 763. We held that the ASAOC was an administrative settlement, thereby .affirming the district court’s dismissal of the plaintiffs’ contribution action as time-barred. Id. at 768-71. We based our reasoning on three provisions: first, the ASAOC provided that the parties agreed that the agreement “constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA ... pursuant to which the [plaintiffs] have, as of the Effective Date, resolved their liability to the United States for the Work, and Future Response Costs.” Id. at 768-69; Hobart ASAOC ¶ 96b. We explained that this provision expressed the parties’ intent to resolve some of the plaintiffs’ liability because the parties expressly designated the agreement as an “administrative settlement,” cited the relevant statutory provision, and made immediately effective resolution of plaintiffs’ liability. Id. at 769. Second, we cited the title of the agreement: “Administrative Settlement Agreement and Order on Consent.” Id. We observed that the title “precisely matched the statutory language in § 113(f)(3)(B) (‘administrative or judicially approved settlement.’).” Id. Third, we considered the *1005 EPA’s broad covenant not to sue or take administrative action, taken “[i]n consideration of the actions that will be performed and the payments. that will be made by [the plaintiffs] under the terms of this Settlement Agreement.” Id.; Hobart AS-AOC ¶ 82. Reading that provision- in concert with the above paragraphs, we concluded that the parties intended for the ASAOC to resolve the plaintiffs’ liability to the government as of the effective date of the ASAOC. Hobart, 758 F.3d at 769.
In Hobart, we went on to identify four “material differences” between the AS-AOC in Hobart and AOC in the ITT case. Id. at 770. First, the title of the agreement in Hobart included the phrase “administrative settlement,” while the ITT agreement did not, which we considered probative of intent. Id. Second, and more substantively, the ASAOC explicitly stated that the plaintiffs’ liability was resolved while the ITT AOC’s analogous paragraph contained “no explicit statement that ITT Industries had resolved its liability.” Id. Third, regarding that same paragraph, the ASAOC contained a reference to the relevant contribution statute, § 113(f)(3)(B), while the analogous paragraph in the ITT AOC did not. Id. Fourth and finally, the government’s covenant not to sue was much broader in the ASAOC than the ITT AOC and took effect immediately, and, at the same time, the government’s reservation of rights and ability to withdraw from the ASAOC was narrower than the ITT AOC. Id. With respect to the Seventh Circuit’s Bernstein case, we observed that it was distinguishable from Hobart because resolution of liability was contingent on performance and was therefore not “definitively settled” upon signing of the AOC in Bernstein. Id. at 771.
Our analysis in Hobart supports our conclusion that the Sanford and Orlando AOCs do not resolve plaintiffs liability and are therefore not administrative settlements. Most compelling is that the “material differences” between the Hobart ASAOC and the ITT AOC likewise separate the Sanford and Orlando AOCs from the Hobart ASAOC. With respect to the title of the agreements, neither the Sanford nor Orlando AOC is titled “administrative settlement” — a phrase that is not found anywhere in either AOC. Regarding the resolution of liability, the instant AOCs expressly condition the resolution of liability on performance of the contract, as opposed to resolving liability on the contract’s effective date. Specifically, the AOCs provide: “[F]ollowing satisfaction of the requirements of this Consent Order, [plaintiff] shall have resolved its liability.” This language is distinguishable from that of the Hobart ASAOC and is more like the conditional language of the Bernstein agreement, which Hobart distinguished for failure to “definitively settle[]” the plaintiffs’ liability. 758 F.3d at 771. Indeed, the language of the instant AOCs goes beyond that of the Bernstein agreement to expressly condition resolution of liability on performance (as opposed to inferring the conditional resolution of liability based on the conditions attached to the EPA’s covenant not to sue and broad reservation of rights). Finally, the Hobart court observed that the government’s covenant not to sue was broader, and reservation of rights narrower, in the Hobart ASAOC than the ITT AOC. Here, the Sanford and Orlando AOCs expressly condition the EPA’s covenant not to sue on “complete and satisfactory performance by [plaintiff] of [its] obligations under this [AOC],” and broadly reserve the EPA’s rights until “satisfaction of the requirements of this [AOC].” These “material differences” thus illustrate that the instant AOCs are more like the AOC in ITT than the ASAOC in Hobart.
*1006 D.
Defendant’s arguments to the contrary are unconvincing. It is defendant’s position that the AOCs resolved at least some of plaintiffs liability once plaintiff “cut a check” to the EPA for past response costs. We disagree for two simple reasons. First, defendant’s argument does not comport with the language of the AOCs, which conditions the resolution of liability on complete — not partial — performance. The reservation of rights provision, for example, states that plaintiff “shall have resolved [its] liability to EPA” “following satisfaction of the requirements of this Consent Order,” not any single requirement. (Emphasis added.) And the covenants not to sue are “conditioned upon the complete and satisfactory performance [by plaintiff] of [its] obligations under this Order.” Second, we are doubtful that the tendering of a check to the EPA distinguishes this case from the aforementioned cases. In every case, the plaintiffs agreed to reimburse the EPA for past costs incurred. In ITT and Hobart, the parties agreed that “[plaintiffs] shall pay” to the EPA certain specified costs upon receiving a bill from the EPA. ITT AOC, at 15; Hobart ASAOC, ¶ 79. In Bernstein, the AOC included a specific amount: the plaintiff agreed to pay $112,799.53 within 60 days of the effective date of the AOC. Bernstein AOC, at 20. There is no reason to believe that the Bernstein plaintiff failed to tender payment by the deadline or that the ITT plaintiff failed to pay the EPA when it received a bill. And partial performance seems to have made no difference in Bernstein, in which performance of the 2002 AOC was ongoing at the time of litigation. Accordingly, even if defendant’s argument did not contravene the language of the AOCs, we would not conclude that payment of some costs transformed the AOC into an administrative settlement.
Finally, defendant argues that the AOCs are bilateral contracts, characterized by an exchange of mutual promises to do something in the future and enforceable at the time of the exchange, as opposed to the time of performance. The dissenting opinion takes this argument further, arguing that one of our prior cases, RSR Corp. v. Commercial Metals Co., 496 F.3d 552 (6th Cir.2007), is binding precedent that “precludes [a] distinction between immediate and conditional effectiveness as a basis for determining whether an agreement'has resolved a PRP’s liability.” The dissent is the first to suggest that RSR Corp. is dispositive.
In RSR Corp., the plaintiff entered into a judicially approved consent decree in which it agreed to reimburse the EPA for past and future response costs, finance and perform remedial work at a contaminated site, and undertake additional future response actions. Id. at 554. In return, the EPA agreed not to sue or take administrative action against the plaintiff that would impose further liability, and the plaintiff received the right to seek contribution against other PRPs. Id. More than three years later, the plaintiff filed a contribution action against the defendant, which moved to dismiss the action as barred by the statute of limitations. Id. At issue in that case was whether CERCLA’s three-year statute of limitations on contribution actions or six-year limitations period for cost recovery actions governed the judicial consent decree. Id. at 555-56. After a detailed discussion of CERCLA’s statutory framework, we concluded that plaintiffs action was one for contribution governed by a three-year statute of limitations. Id. at 556. Only then did we briefly address RSR’s argument raised in its reply brief that it “could not have resolved its liability to the United States in the consent decree *1007 before the completion of the remedial action.” Id. at 558. We observed that,
RSR’s promise of future performance was the very consideration it gave in exchange for the United States’ covenant not to seek further damages. RSR and its co-defendants in other words resolved their liability to the United States by agreeing to assume all liability (vis-a-vis the United States) for future remedial actions. And even if the covenant regarding future response costs did not take effect until the remedial action was complete, the statute of limitations for contribution actions runs from the “entry” of the settlement, 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of that settlement takes effect.
Id. We thus rejected RSR’s attempt to evade the three-year statute of limitations.
Notably, RSR Corp. did not interpret the various provisions of the consent decree for purposes of determining whether the parties intended to resolve liability by way of the consent decree, as did ITT, Hobart, and Bernstein. In fact, it is far from clear from our opinion that RSR even contested that the parties intended to resolve its liability by way of the consent decree. In RSR Corp., we assumed, “[i]n view of the apportionment of liability for past and future response costs among the United States, RSR and its co-defendants [that] the consent decree was a cost-recovery settlement under § 122(h) as well as a cleanup agreement under § 122(d)(1) [and] [b]ecause the consent decree established RSR’s liability, its contribution action regarding those ‘costs’ accrued on the date of the consent decree (April 12, 1999) and expired three years later.” Id. Only after we observed that the consent decree had resolved liability — without engaging the various provisions of the consent decree— did we reason that “even if the covenant ... did not take effect until the remedial action was complete, the statute of limitations for contribution actions runs from the ‘entry’ of the settlement ..., not from the date that each provision of that settlement takes effect.” Id. To be clear, we do not fault the RSR Corp. court for declining to consider whether the parties intended the consent decree to resolve RSR’s liability, as it appears that the issue was not squarely before the court. Where that leaves us is this:- we have at least two Sixth Circuit cases, ITT and Hobart, and the Seventh Circuit case of Bernstein, that are more applicable than RSR Corp. We thus disagree that RSR Corp. forecloses our resolution of this case.
Since RSR Corp., both the Seventh Circuit in Bernstein and this circuit in Hobart have distinguished the consent decree in RSR Corp. from the contracts at issue in those cases. In Bernstein, the Seventh Circuit concluded that RSR Corp. was distinguishable based on “obvious and dispos-itive differences in the facts”:
In [RSR Corp.], the consent order contained an immediately effective release from liability. In this case, it did not. In fact, far from immediately resolving all liability, our AOC immediately resolved none. So, the consideration in [RSR Corp.] was an immediate release from liability; the consideration in this case was a conditional promise to release from liability if and when performance was completed. Given the nature of the statutory trigger, that distinction clearly warrants a different result.
Bernstein, 733 F.3d at 213 (citation omitted). Likewise, in Hobart, our court observed that the ASAOC in that case, like the consent decree in RSR Corp., went into effect on the effective date of the ASAOC, whereas in Bernstein the plaintiff “had to meet certain prerequisites before *1008 the [AOC] went into effect.” 758 F.3d at 771.
The dissenting opinion maintains that the Bernstein and Hobart courts erred in their interpretation of the consent decree in RSR Corp. Specifically, the dissent unearths the underlying 1999 judicial consent decree, not quoted in the RSR Corp. decision, to show that the consent decree was not immediately effective. As a preliminary matter, it is not clear that the Bernstein or Hobart court erred. The covenant not to sue provision in the RSR Corp. consent decree provides:
In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree ... the United States covenants not to sue or to take administrative action against Settling Defendants.... [T]hese covenants not to sue shall take effect upon the receipt by EPA of the payments required.... With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remediation Action by EPA.
RSR Corp. Consent Decree, at 79.[1] Quoting this provision in part, the Bernstein court probably erred in characterizing the covenant not to sue as immediately effective, but did not necessarily err in interpreting the resolution of liability as immediately effective, especially when read in light of our court’s interpretation of the consent decree in RSR Corp., 496 F.3d at 558. We observed that RSR and its co-defendants had agreed to resolve liability by agreeing to assume all liability for future actions, and, “even if the covenant regarding future response costs did not take effect until the remedial action was complete, the statute of limitations for contribution actions ran from the date of ‘entry’ of the settlement ..., not from the date each provision of the settlement takes effect.” Id. In other- words, the Bernstein court reasonably distinguished between a case in which parties “immediately resolved] liability” based on promises of future action and “a conditional promise to release from liability if and when performance was completed.” Bernstein, 733 F.3d at 213. The effect of the former is an immediately effective release of liability (as of the effective date of the agreement) and the effect of the latter is no resolution of liability. The same is true for the Hobart court, which relied on the same distinction.
More importantly, even if we assume that the Bernstein and Hobart courts misread the RSR Corp. consent decree, RSR Corp. does not preclude a distinction between immediate and conditional effectiveness because our more recent published decision in Hobart adopts and ratifies this distinction. Regardless of the actual language of the RSR Corp. consent decree, our court’s 2014 decision draws a bright line between cases in which the resolution of liability is immediately effective and when the resolution of liability is subject to what the dissent calls a “condition precedent.” In Hobart, the court distinguished an agreement reading, “The Parties agree that this Settlement Agreement - constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA ... pursuant to which [the plaintiffs] have, as of the Effective Date, resolved their liability to the United States for the Work, and Future Response Costs,” 758 F.3d at 769, from the Bernstein AOC, which required the PRP “to meet certain prerequisites before the administrative order of consent went into effect,” id,.; see also Bernstein, 733 F.3d at 212. It then explained that where liability was settled on the effective date, “liability was definitively *1009 settled,” which is “factually distinct” from cases in which there were prerequisites to settling liability. The dissent recognizes that there is a difference between cases in which resolution of liability is subject to a “condition precedent,” as opposed to a “condition subsequent,” but asserts that the distinction “does not represent a rational basis” for resolving liability. Because our recently published decision in Hobart says this difference is legally significant, we must disagree with the dissent.
Finally, we acknowledge the dissent’s concerns about the “inconsistency” in our circuit’s analysis of settlement agreements under CERCLA § 113(f). Some historical background helps to explain the development of our case law. In 2005, the EPA revised its model AOCs. See Susan E. Bromm & Bruce S. Gelber, U.S. EPA & U.S. DOJ, Interim Revisions to CERCLA Removal, RI/FS and RD AOC Models to Clarify Contribution Rights and Protection Under Section 113(f) (Aug. 3, 2005). Although defendant asks us to consider the EPA’s memorandum in interpreting the AOCs in this case, our court has already held that the “EPA memorandum is parol evidence, which can be consulted only in certain limited circumstances [and] [t]his situation does not fall within one of those narrow exceptions.” Hobart, 758 F.3d at 770-71; see also Duval Motors Co. v. Rogers, 73 So.3d 261, 265 (Fla.Dist.Ct.App.2011) (“As a general rule, evidence outside the contract language, which is known as parol evidence, may be considered only when the contract language contains a latent ambiguity.”). We therefore do not consult the EPA’s memorandum for purposes of interpreting the AOCs, but we do acknowledge, for historical background, that the EPA made significant changes to its AOCs in 2005.
Among those revisions, the EPA retitled its model “Administrative Order on Consent,” as “Administrative Settlement Agreement and Order on Consent,” and referred to the document as a “settlement agreement.” EPA Mem., passim. It also inserted a provision stating that the parties “agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), pursuant to which [specified PRPs] have, as of the Effective Date, resolved their liability to the United States for the Work, Past Response Costs, and Future Response Costs.” Id. at 5. In Hobart, a case involving a 2006 ASAOC, our court found this modified language significantly probative of an intent to resolve the PRP’s liability. 758 F.3d at 768-69. The addition of these modifications thus explains a departure from our prior cases, separating pre-2005 AOCs that do not provide for resolution of liability on the effective date from those post-2005 ASAOCs that do. This is not to say that we will universally conclude that all post-2005 ASAOCs resolve a PRP’s liability, or that all pre-2005 AOCs do not, but this historical development serves to explain the “inconsistency” mentioned by the dissent. It also reinforces our conclusion that the pre-2005 AOCs in this case are more like the 2002 ITT and Bernstein AOCs, and affirms the relevance of provisions detailing the EPA’s reservation of rights, covenant not to sue, and the plaintiffs non-admission of liability. Ultimately, in light of the guidance available to us in ITT and Bernstein, we cannot agree with the dissent that the “inconsistency” in our ease law justifies the conclusion that the AOCs resolve plaintiffs liability. Because we rule in favor of plaintiff on its statute of limitations argument, we need not reach its remaining claims of error.
III.
For these reasons, we reverse the judgment of the district court and remand for *1010 further proceedings consistent with this opinion.

. United States v. Shane, 3:89-cv-383 (S.D.Ohio) (record entry 436).